**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*, | |
| Plaintiffs, | Civil Action No. 16-259 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| FEDERAL ELECTION COMMISSION, | |
| Defendant, | |
| and | |
| CROSSROADS GRASSROOTS POLICY STRATEGIES, | |
| Defendant–Intervenor. | |

**MEMORANDUM OPINION**

The plaintiffs, Citizens for Responsibility and Ethics in Washington ("CREW") and Nicholas Mezlak, a registered voter in Ohio, bring this action against the Federal Election Commission ("FEC"), challenging the FEC's dismissal of the plaintiffs' administrative complaint, which alleged that Crossroads Grassroots Policy Strategies ("Crossroads GPS") had failed properly to disclose the identities of donors whose contributions were used to fund independent expenditures in various 2012 U.S. Senate races. The plaintiffs claim that the dismissal was arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Federal Election Campaign Act of 1971 ("FECA"), 52 U.S.C. § 30109(a)(8)(C). Pending before the Court is the FEC's Partial Motion to Dismiss ("FEC's MTD"), ECF No. 12, as well as a Notice of Joinder and Supplementation of Federal Election Commission's Partial Motion to Dismiss and Memorandum

1

in Support Thereof by Crossroads GPS ("Crossroads GPS's Supplemental MTD"), ECF No. 17, whose motion to intervene was previously granted, *see* Minute Order (dated Apr. 26, 2016).  For the reasons set out below, the FEC's Partial Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), is denied, and Crossroads GPS's Supplemental Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted in part and denied in part.

## I.   BACKGROUND

The plaintiffs challenge the FEC's dismissal of their administrative complaint against Crossroads GPS for failing to apply properly the applicable statute or regulation, which regulation they further contend is invalid because it conflicts with the governing statute.  The FECA's relevant statutory and regulatory scheme is described before discussing the administrative proceedings underlying the plaintiffs' instant complaint.

### A.   Disclosure Requirements for Independent Expenditures

Under the FECA and applicable FEC regulations, organizations that make independent expenditures must comply with certain disclosure requirements.[1]  Relevant here, the FECA provides that an organization "mak[ing] independent expenditures in an aggregate amount or value in excess of $250 during a calendar year shall file a statement" detailing the contributions it receives.  52 U.S.C. § 30104(c)(1).  Such statements must include, *inter alia*, "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering *an* independent expenditure."  *Id.* § 30104(c)(2)(C) (emphasis added).  The FEC regulation, in effect since 1980, implementing 52 U.S.C. § 30104(c) uses similar but not identical language, requiring that a donor's identity be

---

[1]   An "independent expenditure" is defined in the FECA as "an expenditure by a person . . . expressly advocating the election or defeat of a clearly identified candidate . . . that is not made in concert or cooperation with or at the request or suggestion of such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents."  52 U.S.C. § 30101(17).

disclosed if the donation was "made for the purpose of furthering *the reported* independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi) (emphasis added); *see* FEC, Amendments to Federal Election Campaign Act of 1971, 45 Fed. Reg. 15080, 15087 (Mar. 7, 1980).

**B.     Events Giving Rise to the Plaintiffs' FEC Complaint**

CREW is a watchdog organization "committed to protecting the rights of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, protecting our political system against corruption, and reducing the influence of money in politics." Compl. ¶¶ 8, ECF No. 1.[2]  Nicholas Mezlak is a U.S. citizen registered to vote in Ohio. *Id.* ¶ 17. Crossroads GPS funds independent expenditures. *See id.* ¶¶ 35, 40, 44. The plaintiffs' FEC complaint alleged that Crossroads GPS failed to make the requisite disclosures for certain of its independent expenditures arising out of an anonymous matching challenge and a fundraiser in Tampa, Florida. *Id.* ¶¶ 35–54.

**1.     Anonymous Matching Challenge for the Ohio Senate Race**

In the spring of 2012, Karl Rove, an "uncompensated advisor to Crossroads GPS," *see* Compl., Ex. I, Affidavit of Karl Rove ("Rove Aff.") ¶ 1, ECF No. 1-9, received a phone call from an unnamed donor regarding the Ohio Senate race between incumbent Sherrod Brown and his challenger, Josh Mandel, Compl. ¶ 43. According to news reports, the donor stated, "I really like Josh Mandel," and "I'll give ya $3 million, matching challenge." *Id.* (internal quotation marks omitted). Before the FEC, Mr. Rove acknowledged that the news reports' description of the conversation was "'substantially accurate,'" *id.* ¶ 56 (quoting Rove Aff. ¶ 3), that the anonymous donor ultimately "contributed more than $3 million to Crossroads GPS," *id.* (emphasis omitted), and that the matching challenge generated an additional $1.3 million, *id.*

---

[2]     The following factual allegations are taken from the Complaint and exhibits attached thereto, and are assumed true for purposes of the pending motions.

¶ 58.  Although "the conversation did not discuss the details of any particular independent expenditure," *id.* ¶ 56, Mr. Rove stated that he understood the contribution to be intended for "'aid[ing]' the election of Josh Mandel,'" *id.* ¶ 57 (quoting Rove Aff. ¶ 10).

Crossroads GPS spent over $10 million on television advertising that mentioned at least one of the candidates in the Ohio Senate race, including $6,363,711 on independent expenditures opposing Senator Brown's reelection.  *Id.* ¶¶ 44, 59.  Crossroads GPS did not disclose the identity of the donor who pledged $3 million in contributions for the Ohio Senate race or the names of other donors who donated to match that contribution.  *Id.* ¶ 45.

### 2.  The Tampa Fundraiser

On August 30, 2012, Crossroads GPS held a fundraiser in Tampa, Florida, "in conjunction with American Crossroads, an independent expenditure-only political committee closely associated with Crossroads GPS."  *Id.* ¶ 40.  "Approximately 70 high-earning and powerful donors, including hedge fund billionaires and investors," were in attendance.  *Id.* ¶ 41.  During the fundraiser, Mr. Rove briefed the attendees on 15 active Senate races, *id.* ¶ 42, and played 14 television ads targeting Democratic Senate candidates in 6 states: Virginia, Ohio, Montana, Florida, Massachusetts, and Nevada, *id.* ¶ 47.  After the ads were shown, Crossroads GPS and American Crossroads "solicited the attendees for additional contributions, noting that additional sums were needed because advertising rates were increasing, making it more costly for Crossroads GPS to broadcast advertisements like those the attendees had just watched."  *Id.* ¶ 49.  Former Governor of Mississippi, Haley Barbour, "made the final pitch for money."  *Id.* ¶ 50.  Crossroads GPS subsequently "made independent expenditures in five of the six races for which ads were shown" during the fundraiser, and "many" of those advertisements "mirrored the ads shown."  *Id.* ¶¶ 51–52.  In addition to its Ohio independent expenditures, Crossroads GPS

reported spending "upwards of $17 million" on ads in the Virginia, Montana, and Nevada Senate races after the fundraiser had occurred.  *Id.* ¶ 53.  Crossroads GPS did not disclose in its FEC filings the names of the donors who funded these ads.  *Id.*

### C.    The FEC's Dismissal of the Plaintiffs' Complaint

Under the FECA, "[a]ny person who believes a violation of [the FECA] has occurred, may file a complaint with the Commission."  52 U.S.C. § 30109(a)(1).  If, after affording the alleged violator an opportunity to respond, four of the six FEC Commissioners find "reason to believe" that a violation has occurred, the Commission undertakes an investigation of the alleged violation.  *Id.* § 30109(a)(2).

On November 14, 2012, CREW filed a complaint with the FEC alleging that Crossroads GPS had (1) "failed disclose the contributor who pledged to contribute $3 million to Crossroads GPS to aid in the election of Josh Mandel by funding Crossroads GPS's independent expenditures in Ohio," (2) "failed to disclose the contributors who made matching donations for the same purpose," and (3) "failed to disclose the contributors at the August 30 meeting who contributed to Crossroads GPS, including those who contributed to further its independent expenditures in the Ohio, Virginia, Montana, and Nevada Senate races."  Compl. ¶ 55.  The FEC respondents, including Crossroads GPS and various individuals affiliated with the organization, responded explaining that the phone conversation with the anonymous donor occurred "months before the August 30 meeting[,] which would also be months before many of the ads shown at the August 30 meeting were . . . paid for and aired."  *Id.* ¶ 56 (internal quotation marks omitted). The FEC respondents further maintained that Mr. Rove did not discuss any particular independent expenditure with the anonymous donor.  *Id.*  Regarding the Tampa fundraiser, the FEC respondents argued that any solicitations were made on behalf of American Crossroads

rather than Crossroads GPS, *id.* ¶ 61, and, in any event, the attendees were not asked to contribute to any *particular* ad, noting that most of the ads shown during the fundraiser "had already been paid for and aired," *id.* ¶ 60 (internal quotation marks omitted).

The FEC's Office of the General Counsel ("OGC") issued an initial report on March 7, 2014, recommending that the FEC Commissioners find no "reason to believe," 52 U.S.C. § 30109(a)(2), that Crossroads GPS had violated the FECA's disclosure requirements or the FEC's implementing regulations and dismiss the plaintiffs' complaint. *See* Compl. ¶ 64. The OGC report largely adopted the arguments set out in the respondents' filing, finding that the evidence did not suggest that any of the contested donations were earmarked for particular independent expenditures. *See id.* The OGC acknowledged that 52 U.S.C. § 30104(c)(2) of the FECA "'may reasonably be construed to require disclosure of the identity of certain contributors regardless of whether the contributor made a contribution to further a specific independent expenditure,'" *id.* ¶ 65 (quoting Decl. of Steven Law, President, Crossroads GPS, Ex. B ("OGC Report") at 10, ECF No. 8-6), but nevertheless adhered to "'the Commission's controlling interpretation of the statutory provision,'" as stated in 11 C.F.R. § 109.10(e)(1)(vi), *id.* ¶ 66 (quoting OGC Report at 12 n.57). The OGC also observed that 52 U.S.C. § 30104(c)(1) might impose additional reporting obligations for certain contributions made for the purpose of influencing a federal election generally but that the implementing regulations were silent as to any such requirement. *See* Compl. ¶ 67. Accordingly, the OGC recommended that the FEC decline to exercise its prosecutorial discretion to investigate a claim under § 30104(c)(1) given "'equitable concerns about whether a filer has fair notice of the requisite level of disclosure required by law.'" *Id.* (quoting OGC Report at 13).

The FEC Commissioners deadlocked three-to-three as to whether there was "reason to believe" that Crossroads GPS violated 52 U.S.C. §§ 30104(c)(1) or (2) or 11 C.F.R. § 109.10(e)(1)(vi). *Id.* ¶ 70. Consequently, on December 17, 2015, the FEC voted six-to-zero to dismiss the plaintiffs' complaint. *Id.* ¶ 71. The three Commissioners who voted against opening an investigation did not issue a Statement of Reasons explaining their vote. *Id.* ¶ 72.

### D. The Plaintiffs' Instant Claims

The plaintiffs' instant complaint asserts three claims, all stemming from the FEC's failure to find "reason to believe" that Crossroads GPS violated FECA's statutory provisions, at 52 U.S.C. §§ 30104(c)(1) and (2), and the implementing regulation, at 11 C.F.R. § 109.10(e)(1)(vi). Specifically, in Count I, the plaintiffs contend that the FEC's failure to find "reason to believe" that Crossroads GPS violated 11 C.F.R. § 109.10(e)(1)(vi) was arbitrary and capricious, an abuse of discretion, and contrary to law, because "the evidence before the Commission provided a reason to believe that Crossroads GPS accepted contributions made for the purpose of airing its independent expenditures in Ohio, Virginia, Montana, and Nevada," and the OGC "unreasonably credited Crossroads GPS's response and, in particular, the affidavit of Mr. Rove, in violation of the FEC's prior guidance." Compl. ¶ 113. As relief for this alleged violation of the FECA, 52 U.S.C. § 30109(a)(8)(C), and the APA, 5 U.S.C. § 706, the plaintiffs seek a declaration that dismissal of their administrative complaint was arbitrary and capricious and contrary to law. *Id.* ¶ 116.

In Count II, the plaintiffs assert that the FEC's failure to find "reason to believe" that Crossroads GPS violated 52 U.S.C. § 30104(c)(2) was arbitrary and capricious, an abuse of discretion, and contrary to law, in violation of the FECA and the APA, *see id.* ¶¶ 117–24, because "11 C.F.R. § 109.10(e)(1)(vi) conflicts with the FECA," *id.* ¶ 123. That is, the plaintiffs

7

contend that the regulation is invalid because it is narrower than the statute and imposes less stringent disclosure requirements. *See id.* ¶ 119 ("[T]he regulation . . . clearly frustrates Congress's intent to require disclosure in situations where contributions were made for the purpose of furthering independent expenditures, even if the purpose was not to further a specific independent expenditure exactly as the ad was aired and reported to the FEC."). As relief, the plaintiffs seek a declaration that the FEC violated the FECA and the APA by dismissing the plaintiffs' complaint and that 11 C.F.R. § 109.10(e)(1)(vi) "is unlawful and invalid." *Id.* ¶ 124.

Finally, Count III alleges that the FEC's failure to find "reason to believe" that Crossroads GPS violated 52 U.S.C. § 30104(c)(1) was arbitrary and capricious and contrary to law, in violation of the FECA and the APA. *See id.* ¶¶ 125–31. The plaintiffs contend that "[t]he OGC recognized that, apart from any reporting obligations imposed by 52 U.S.C. § 30104(c)(2) and 11 C.F.R. § 109.10(e)(1)(vi), 52 U.S.C. § 30104(c)(1) imposes a separate obligation on those making independent expenditures to disclose contributions made for the purpose of influencing a federal election generally." *Id.* ¶ 127 (internal quotation marks omitted). According to the plaintiffs, the FEC acted arbitrarily and capriciously by accepting the OGC's recommendation to "dismiss[] the allegation on the belief that Crossroads GPS 'could' raise a defense that it did not have 'fair notice' of the disclosure requirements." *Id.* ¶ 129. The plaintiffs seek as a relief a declaration that the FEC's dismissal of the plaintiffs' complaint on this ground was arbitrary and capricious. *Id.* ¶ 131.

The FEC now moves to dismiss Count II only, pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this claim "challeng[ing] the lawfulness of 11 C.F.R. § 109.10(e)(1)(vi) pursuant to the [APA]" is "barred by the six-year statute of limitations at 28 U.S.C. § 2401(a)," since the regulation has been in place for more than 30 years. *See* FEC's

MTD at 1; FEC's Mem. Supp. MTD ("FEC's Mem.") at 1, ECF No. 12; *id.* at 4 ("Claims One and Three of plaintiffs' complaint seek relief that genuinely relates to the agency's dismissal of plaintiffs' administrative complaint without opening an investigation.").  Crossroads GPS moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the portions of Counts I, II, and III that seek relief under the APA, on the grounds that the FECA "provides the exclusive avenue for review of the FEC's dismissal of the administrative complaint that Plaintiffs challenge in this action and precludes judicial review of the same under the APA."  Crossroads GPS's Supplemental MTD at 1–2.  These pending motions are ripe for review.

## II.   LEGAL STANDARD

The standards governing motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are set out below.

### A.   Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'"  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction over the subject matter by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating subject-matter jurisdiction, the court may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197.

### B.      Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, ⎯⎯ U.S. ⎯⎯, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" for "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570; *see*

10

*Banneker Ventures LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully . . . ." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (second alteration in original).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555; *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015), "but is not required to accept the plaintiff's legal conclusions as correct," *Sissel v. U.S. Dep't Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014); *see also Harris*, 791 F.3d at 68 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (quoting *Iqbal*, 556 U.S. at 678)), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Harris*, 791 F.3d at 68 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678 ); *Banneker Ventures*, 798 F.3d at 1129 (same).  In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

The plaintiffs assert three Counts under both the APA and the FECA, each of which alleges that the FEC's finding that there was no "reason to believe" a violation had occurred was arbitrary and capricious and contrary to law because, in Count I, the FEC ignored undisputed

evidence that Crossroads GPS had violated 11 C.F.R. § 109.10(e)(1)(vi) by failing to disclose the identities of individuals whose donations to Crossroads GPS were used to fund independent expenditures; in Count II, the FEC predicated dismissal of the plaintiffs' administrative complaint on 11 C.F.R. § 109.10(e)(1)(vi), which conflicts with the FECA's disclosure provision, 52 U.S.C. § 30104(c)(2); and, finally, in Count III, despite acknowledging that 52 U.S.C. § 30104(c)(1) may impose a separate disclosure obligation for independent expenditures intended to "influenc[e] a federal election generally," Compl. ¶ 67, the FEC nonetheless failed to apply any such standard in evaluating the plaintiffs' administrative complaint against Crossroads GPS.

The FEC has moved to dismiss, under Rule 12(b)(1), Count II challenging the lawfulness of 11 C.F.R. § 109.10(e)(1)(vi), on the ground that the plaintiffs' challenge to § 109.10(e)(1)(vi), which was promulgated in 1980, is untimely, pursuant to the six-year statute of limitations for commencing a civil action against the United States, 28 U.S.C. § 2401(a). Crossroads GPS joins in the FEC's motion and also moves, under Rule 12(b)(6), to dismiss all portions of Counts I, II, and III seeking relief under the APA, since, according to Crossroads GPS, the FECA provides the exclusive avenue for review of the FEC's dismissal of an administrative complaint.

### A. The FEC's Motion to Dismiss Under Rule 12(b)(1)

With respect to the FEC's motion to dismiss, the parties agree that 28 U.S.C. § 2401(a) prescribes the applicable statute of limitations for challenging 11 C.F.R. 109.10(e)(1)(vi).[3] *See* FEC's Mem. at 1; Pls.' Mem. Opp'n Defs.' Mots. Dismiss ("Pls.' Opp'n") at 6, ECF No. 18. Nevertheless, relying on *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195 (D.C.

---

[3]     Section 2401(a) provides, in relevant part, that "[e]xcept as provided by chapter 71 of title 41 [relating to claims arising out of government contracts], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues . . . ."

Cir. 1987), and its progeny, the plaintiffs argue that a party adversely affected by a regulation that allegedly conflicts with the authorizing statute may challenge that regulation after the statute of limitations has expired.  *See* Pls.' Opp'n at 6–7.  In *NLRB Union*, the Union sued the Federal Labor Relations Authority ("FLRA") arguing that two FLRA regulations "were inconsistent with" the Federal Service Labor-Management Relation Statute.  834 F.2d at 192.  The agency argued, unsuccessfully, that the court lacked jurisdiction to entertain the Union's suit because the applicable statute of limitations had run.  *Id.* at 195.  In rejecting the agency's argument, the Court noted a "long line of cases" permitting "attacks on the substantive validity of regulations" initiated after expiration of the statute of limitations, and reinforced the notion that "a party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them."  *Id.*  The contours of this pronouncement have been refined in subsequent D.C. Circuit cases.

The plaintiffs here rely on two such cases to argue that this action is not time-barred by limitations period provided in § 2401(a).  First, the plaintiffs point to *AT&T Co. v. FCC*, 978 F.2d 727 (D.C. Cir. 1992), a case arising out of the FCC's dismissal of AT&T's administrative complaint alleging that MCI, one of AT&T's competitors, "had violated and was continuing to violate" § 203 of the Communications Act by charging some customers rates that had not been filed with the FCC.  *Id.* at 232.  The FCC dismissed AT&T's complaint based on the Commission's *Fourth Report and Order* ("*Fourth Report*"), *id.*, and AT&T then sued the FCC challenging the dismissal of its administrative complaint, arguing in principal part that the *Fourth Report* was contrary to § 203.  *Id.* at 729–30.  Although the case did not implicate any statute-of-limitations issues, the D.C. Circuit had occasion to note that "[i]t is well established that a rule may be reviewed when it is applied in an adjudication."  *Id.* at 734 (citing *NLRB*

*Union*, 834 F.2d at 195). The D.C. Circuit held that because the *Fourth Report* had been "applied" in dismissing AT&T's administrative complaint, the validity of the *Fourth Report* was properly before the Court. *Id.*

The plaintiffs also rely on *Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142 (D.C. Cir. 2014), which presented the question whether the plaintiff could challenge a rule published by the Federal Motor Carrier Safety Administration ("FMCSA") after the applicable 60–day statute of limitations had expired. *Id.* at 145. The plaintiff claimed injury from the challenged rule because a traffic citation issued to him but subsequently dismissed by a state court was entered and remained in an FMCSA database used by prospective employers to screen applicants. *Id.* at 142–43. The plaintiff sued the FMCSA arguing that the agency's rule governing database corrections "violated the statute authorizing the Secretary of Transportation to maintain the database," *id.*, since the statute required the Secretary to, *inter alia*, "'ensure . . . [that] all the data is complete, timely, and accurate,'" *id.* (quoting 49 U.S.C. § 31106(a)(3)(F)), and "'provide for review and correction of information in the database,'" *id.* (quoting 49 U.S.C. § 31106(e)(1)). The FMCSA argued that the court lacked jurisdiction over the suit because "someone who is injured by a rule that he has failed to attack within the time limit may still challenge that rule, but *only* as a defense in an 'enforcement action.'" *Id.* at 145. The D.C. Circuit rejected the FMCSA's argument, holding that "when an agency seeks to apply [a] rule, *those affected* may challenge that applicable on the grounds that it 'conflicts with the statute from which its authority derives . . . .'" *Id.* (emphasis added) (quoting *Nat'l Air Transp. Ass'n v. McArtor*, 866 F.2d 483, 487 (D.C. Cir. 1989)) (citing *Functional Music, Inc. v. FCC*, 274 F.2d 543, 547–48 (D.C. Cir. 1958); *Graceba Total Commc'ns, Inc. v. FCC*, 115 F.3d 1038, 1040–41 (D.C. Cir. 1997); *AT&T*, 978 F.2d at 734; *Murphy Exploration & Production Co. v.*

*U.S. Dep't of Interior*, 270 F.3d 957, 957–59 (D.C. Cir. 2001)).  The Court explained that jurisdiction was properly exercised over the plaintiff's claim to the extent that the FMCSA had "applied" the challenged rule within 60 days of the plaintiff's filing suit.  *Id.* at 146.[4]

Taken together, *AT&T* and *Weaver* indicate that when an agency applies a regulation to dismiss an administrative complaint, the party whose complaint was dismissed may challenge the regulation after the statute of limitations has expired on the ground that the regulation conflicts with the statute from which it derives.  *See Am. Scholastic TV Programming Found. v. FCC*, 46 F.3d 1173, 1178 n.2 (D.C. Cir. 1995) (explaining that *AT&T* suggested that a party may challenge a regulation as being in excess of its statutory authority in "nonenforcement proceedings where the party is nevertheless harmed by application of the regulation").

The FEC seeks to distinguish *AT&T* and *Weaver* on several grounds, arguing that the plaintiffs here were not "injured" to the same extent as the *AT&T* and *Weaver* plaintiffs and that the plaintiffs' injury in the instant case is so attenuated that they lack standing.  FEC's Reply Supp. Partial MTD ("FEC's Reply") at 4–8, ECF No. 20.  The FEC first notes that, in contrast to the plaintiffs in *AT&T* and *Weaver*, the plaintiffs here were technically "not a party to [the] proceeding" against Crossroads GPS because pursuant to the FECA, "[t]he filing of an administrative complaint is generally the end of the participation in the enforcement matter by the administrative complainant."  *Id.* at 4.  As such, "[t]he administrative complainant is not even aware of what is happening in the proceedings until they have reached a conclusion, because the enforcement proceeding is confidential."  *Id.* (citing 52 U.S.C. § 30109(a)(12)).  Furthermore, the FEC here had no authority to award damages to the plaintiffs had they prevailed in their administrative action.  *Id.* at 4, 6.  Thus, the FEC's argument is, in essence, that the plaintiffs in

---

[4] Ultimately, the D.C. Circuit concluded that it lacked jurisdiction over the plaintiff's case on other grounds. *See id.* at 146.

*AT&T* and *Weaver* suffered a more direct and immediate harm than the plaintiffs in this case and that the plaintiffs' injury here is so remote that it cannot suffice to establish standing.  *Id.* at 7 (distinguishing *AT&T* on the ground that the plaintiffs here allege only an informational injury, and they do not compete with Crossroads GPS in the same way that AT&T competed with MCI).

The FEC's argument is at odds with the broad language employed by the D.C. Circuit in *Weaver* itself.  There, the Court expressly stated that "when an agency seeks to apply [a] rule, *those affected* may challenge that application on the grounds that it conflicts with the statute from which its authority derives."  *Weaver*, 744 F.3d at 145 (internal quotation marks omitted) (emphasis added).  Here, the plaintiffs are plainly "affected" by the FEC's reliance on 11 C.F.R. § 109.10(e)(1)(vi) in dismissing the plaintiffs' administrative complaint—regardless of the plaintiffs' degree of involvement in the administrative process—because, the plaintiffs allege, they were denied access to information to which they were lawfully entitled about who funded certain of Crossroads GPS's independent expenditures.  Indeed, the D.C. Circuit has previously held that a plaintiff has standing under the APA to challenge an FEC regulation, 11 C.F.R. § 104.20(c)(9), because the plaintiff showed that he was "unable to obtain disclosure of information under [the Bipartisan Campaign Reform Act] because of the allegedly unlawful restrictions imposed by 11 C.F.R. § 104.20(c)(9)."  *Ctr. for Individual Freedom v. Van Hollen*, 694 F.3d 108, 109 (D.C. Cir. 2012) (citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) (holding that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute" (citation omitted))).  Thus, to the extent that the FEC contends that the plaintiffs have suffered no injury, that argument is foreclosed by both D.C. Circuit and Supreme Court precedent recognizing that "the denial of information [a plaintiff]

believes the law entitles him to" constitutes an injury in fact.[5]  *Shays v. FEC*, 528 F.3d 914, 923

("[U]nder the FEC's definition of coordinated communications, presidential candidates need not

report as contributions many expenditures that Shays believes BCRA requires them to report.

Thus, Shays claims that the regulation illegally denies him information about who is funding

presidential candidates' campaigns.  We see no difference between this injury and the injury

deemed sufficient to create standing in *Akins*.").  For the foregoing reasons, the FEC's motion to

dismiss Count II is denied.[6]

---

[5]      Neither the FEC nor Crossroads GPS contends that CREW is differently situated than Mr. Mezlak for purposes of standing.  Indeed, this standing analysis applies not only to Mr. Mezlak, an Ohio voter, but also to CREW.  As the D.C. Circuit has explained, "an organizational plaintiff like CREW "ha[s] standing to sue on its own behalf 'to vindicate whatever rights and immunities the association might enjoy.'"  *Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  "In those cases where an organization is suing on its own behalf, it must establish concrete and demonstrable injury to the organization's activities—with a consequent drain on the organization's resources—constituting more than simply a setback to the organization's abstract social interests."  *Id.* (internal quotation marks and alterations omitted).  "Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action."  *Id.* (internal quotation marks and alteration omitted).  Here, CREW alleges that it "uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and the outside influences that have been brought to bear on those actions."  Compl. ¶ 9.  Furthermore, CREW maintains that it is "hindered in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden."  *Id.* ¶ 12; *see also id.* ¶¶ 13–16 (describing CREW's particular activities that are adversely affected by the withholding of donors' identities, allegedly in violation of the FECA).  Accordingly, CREW has sufficiently alleged that its "discrete programmatic concerns are being directly and adversely affected" by the FEC's alleged failure to properly enforce the FECA's disclosure provisions.  *Common Cause*, 108 F.3d at 417.

[6]      The FEC points out that the plaintiffs could have but did not petition the FEC for amendment or rescission of the rule and then sought judicial review of an adverse agency decision.  *See, e.g.*, FEC Mem. at 7–9.  Though true, that fact does not diminish the propriety of the plaintiffs' challenge via this alternate route.  The caselaw makes clear that "[a]n agency's regulations may be attacked in *two ways* once the statutory limitations period has expired."  *NLRB Union*, 834 F.2d at 195.  "First, a party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them."  *Id.*  "The second method of obtaining judicial review of agency regulations once the limitations period has run is to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision."  *Id.* at 196; *accord P&V Enter. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 143 (D.D.C. 2006) (same), *aff'd*, 516 F.3d 1021 (D.C. Cir. 2008).  This second avenue was employed in 2011 by then-Congressman Chris Van Hollen, who petitioned the FEC to amend 11 C.F.R. § 109.10(e)(1)(vi), arguing that the "regulation is manifestly inconsistent with the statute."  Petition for Rulemaking to Revise and Amend Regulations Relating to Disclosure of Independent Expenditures ¶ 6 (Apr. 21, 2011), available online at http://sers.fec.gov/fosers/showpdf.htm?docid= 61143.  The FEC split three-to-three on whether to issue a Notice of Proposed Rulemaking on Congressman Van Hollen's petition, and, accordingly, no rulemaking was initiated.  *See* FEC's Mem. at 8.  Congressman Van Hollen did not challenge the FEC's inaction in Court.  *Id.*

**B.     Crossroads GPS's Motion to Dismiss Under Rule 12(b)(6)**

Crossroads GPS has moved to dismiss the portions of Counts I, II, and III that seek relief

pursuant to the APA, 5 U.S.C. § 706, because, according to Crossroads GPS, "the [FECA], 52

U.S.C. § 30109(a)(8), provides the exclusive avenue for review of the FEC's dismissal of the

administrative complaint that [the plaintiffs] challenge in this action."  *See* Crossroads GPS's

Supplemental MTD at 1–2.[7]   Under the APA, "[a] person suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Judicial review is

available, however, only in the case of "[a]gency action made reviewable by statute and final

agency action *for which there is no other adequate remedy in a court.*"  *Id.* § 704 (emphasis

added); *see Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (explaining that the APA "does

not provide additional judicial remedies in situations where the Congress has provided special

and adequate review procedures" (internal quotation marks omitted)); *Citizens for Responsibility*

---

[7]     The plaintiffs argue that Crossroads GPS's motion to dismiss is procedurally improper, citing the Court's Minute Order, dated April 29, 2016, which modified the briefing schedule to allow then newly-intervened Crossroads GPS to file a "notice of joinder in the [FEC's] Partial Motion to Dismiss, as well as any supplemental memorandum of points and authorities in support thereof."  The plaintiffs contend that Crossroads GPS's Supplemental Motion to Dismiss goes beyond the scope of what the Minute Order contemplated since the motion raises new arguments not previously raised in the FEC's Partial Motion to Dismiss.  *See* Pls.' Opp'n at 10–11 ("Crossroads GPS's attempt to shoehorn a new motion into its notice of joinder in the FEC's motion is improper."). In support, the plaintiffs cite two non-binding, out-of-Circuit district court opinions, neither of which is persuasive in the circumstances of this case.  Here, the plaintiffs do not claim to have suffered any prejudice by Crossroads GPS's motion and, indeed, Crossroads GPS's answer to the plaintiffs' complaint specified as an affirmative defense the same argument it now presses in its motion to dismiss.  *See* Answer and Affirmative Defense of Intervenor-Defendant Crossroads Grassroots Policy Strategies, Affirmative Defenses ¶ 1, ECF No. 14 ("The [APA] does not provide an avenue for relief where other adequate bases for relief from administrative action are available.  Because the FECA otherwise provides relief from improper dismissal, no APA remedy is available here.").  Moreover, as Crossroads GPS points out, "because the pleadings now are closed and there is no risk of delaying trial, Crossroads GPS's Rule 12(b)(6) motion is timely under Rule 12(h) and can and should be entertained and decided under the identical standards that govern a Rule 12(c) motion for judgment on the pleadings."  Crossroads Grassroots Policy Strategies' Reply Supp. Defs.' Partial Mot. Dismiss ("Crossroads GPS's Reply") at 4, ECF No. 19 (citing *Bloom v. McHugh*, 828 F. Supp. 2d 43, 49 (D.D.C. 2011) ("Because, however, the standards for a Rule 12(b)(6) motion and a Rule 12(c) motion for judgment on the pleadings are identical, courts routinely construe motions to dismiss that are filed after a responsive pleading as motions for judgment on the pleadings, and this Court will do likewise.").  For these reasons, Crossroads GPS's Supplemental Motion to Dismiss is properly before the Court.

*& Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (noting

that courts "look for 'clear and convincing evidence' of 'legislative intent' to create a special,

alternative remedy and thereby bar APA review" (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523

(D.C. Cir. 2009))).  Thus, the key question is whether the FECA provides an "adequate remedy"

for the agency action challenged here.

To determine whether the plaintiffs may bring an APA claim in addition to their FECA

claim, the adequacy of the relief provided under the FECA must be considered.  As the D.C.

Circuit has clarified, an alternative remedy "need not provide relief identical to relief under the

APA, so long as it offers relief of the 'same genre,'" and "relief will be deemed adequate [such

that APA review is precluded] 'where a statute affords an opportunity for *de novo* district-court

review' of the agency action."  *Garcia*, 563 F.3d at 522–23 (quoting *El Rio Santa Cruz*

*Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270

(D.C. Cir. 2005)); *see also El Rio*, 396 F.3d at 1270 ("Congress did not intend to permit a litigant

challenging an administrative denial . . . to utilize simultaneously both the [separate statutory]

review provision and the APA." (quoting *Envtl. Def. Fund v. Reilly*, 909 F.3d 1497, 1501 (D.C.

Cir. 1990))).  As relevant here, the FECA provides that "[a]ny party aggrieved by an order of the

Commission dismissing a complaint filed by such party . . . , or by a failure of the Commission

to act on such complaint during the 120-day period beginning on the date the complaint is filed,

may file a petition with the United States District Court for the District of Columbia."  52 U.S.C.

§ 30109(a)(8)(A).  The FECA limits this Court's authority to review such a dismissal as follows:

"In any proceeding under this paragraph the court may declare that the dismissal of the

complaint or the failure to act is contrary to law, and may direct the Commission to conform with

such declaration within 30 days, failing which the complainant may bring, in the name of such

complainant, a civil action to remedy the violation involved in the original complaint."
*Id.* § 30109(a)(8)(C).

Counts I and III advance garden-variety challenges to the FEC's dismissal of the plaintiffs' administrative complaint. *See* Compl. ¶¶ 111, 113 (challenging the FEC's "application" of 11 C.F.R. § 109.10(e)(1)(vi) because "[t]he evidence before the Commission provided a reason to believe that Crossroads GPS accepted contributions made for the purpose of airing its independent expenditures in Ohio, Virginia, Montana, and Nevada"); *see also id.* ¶ 130 (arguing that the FEC "gave no consideration to [certain] facts before refusing to find reason to believe Crossroads GPS violated Section 30104(c)(1)"). With respect to Counts I and III, the plaintiffs seek solely "an order reversing the FEC's unlawful dismissal of [the plaintiffs'] complaint." Pls.' Opp'n at 12. The FECA provides that a district court may "declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration." 52 U.S.C. § 30109(a)(8)(C); *see also Citizens for Responsibility & Ethics in Washington ("CREW") v. FEC*, 164 F. Supp. 3d 113, 119–20 (D.D.C. 2015) ("Under the system of judicial review established by FECA, the Court can override the FEC's decision to dismiss a complaint if 'the dismissal was based on an impermissible interpretation of [FECA] . . . or was arbitrary or capricious, or an abuse of discretion.'" (quoting *Common Cause v. FEC*, 108 F.3d 413, 415 (D.C. Cir. 1997))). Given that this is precisely the relief sought by the plaintiffs, and the fact that the APA is not intended to "duplicate existing procedures for review of agency action," *Bowen* 487 U.S. at 903, the FECA provides an "adequate remedy" with respect to Counts I and III. *Accord CREW v. FEC*, 164 F. Supp. 3d at 120 (holding that the FECA's "comprehensive judicial review provision [52 U.S.C.

§ 30109(a)(8)] precludes review of FEC enforcement decisions under the APA").[8]  Accordingly,

the portions of Counts I and III seeking relief under the APA are dismissed.

This leaves the question whether APA relief is available as to Count II, which differs

from Counts I and III by alleging that the FEC's dismissal of the plaintiffs' administrative

complaint was improper because the dismissal was predicated on an "unlawful and invalid"

regulation, *i.e.*, 11 C.F.R. § 109.10(e)(1)(vi).  Compl. ¶ 124 ("Plaintiffs are therefore entitled to

relief in the form of a declaratory order that defendant FEC is in violation of its statutory

responsibilities under 52 U.S.C. § 30109(a)(8) and 5 U.S.C. § 706, that the FEC has acted

arbitrary [sic] or capriciously, abused its discretion, or acted contrary to law in dismissing [the

plaintiffs' administrative complaint], *and that 11 C.F.R. § 109.10(e)(1)(vi) is unlawful and

invalid*." (emphasis added)).  As the D.C. Circuit has explained, "[t]he FECA has no provisions

governing judicial review of regulations, so an action challenging its implementing regulations

should be brought under the judicial review provisions of the Administrative Procedure Act

(APA), 5 U.S.C. § 701 *et seq.*"  *Perot v. FEC*, 97 F.3d 553, 560 (D.C. Cir. 1996); *see also*

*Unity08 v. FEC*, 596 F.3d 861, 866 (D.C. Cir. 2010) (rejecting the FEC's argument that "FECA

implicitly precludes direct judicial review of Commission advisory opinions"); *Shays v. FEC*,

414 F.3d 76, 95–96 (D.C. Cir. 2005) (describing as "weak[]" the FEC's argument that "because

FECA permits judicial review to determine whether even *non*-enforcement decisions are

---

[8]      In the earlier *CREW v. FEC*, which the FEC contends should be followed here, CREW argued that the FEC had adopted a "'de facto rule[]' . . . governing how the FEC interprets the law and when it will take action" to investigate an administrative complaint.  164 F. Supp. 3d at 115.  CREW asserted that this de facto regulation was "promulgated in violation of the [APA], which, among other things, prescribes procedures for administrative agencies engaged in rulemaking."  *Id.*  The Court granted the FEC's motion to dismiss on two grounds.  First, even if the two adjudications that CREW pointed to "resulted in the announcement of a new principle or interpretation, that principle or interpretation would not be a regulation within the meaning of the APA and would therefore not be subject to notice-and-comment procedures."  *Id.*  Second, and most relevant here, "CREW ha[d] an adequate, alternative means to challenge the [adjudicative] decisions through FECA's judicial review provision, which precludes APA review."  *Id.*

contrary to law, [the plaintiffs] cannot show that no other adequate remedy in a court exists, as required for APA jurisdiction" (internal quotation marks and citations omitted)).  Thus, the D.C. Circuit has clearly instructed that, to the extent that Count II challenges the legal validity of 11 C.F.R. § 109.10(e)(1)(vi), FECA's remedy is not "adequate," and review under the APA is proper.[9]  In the event that the plaintiffs ultimately prevail on their APA challenge to the regulation, however, the Court would remand this action to the FEC for reconsideration of the plaintiffs' administrative complaint in light of the Court's opinion.  *See* 52 U.S.C. § 30109(a)(8)(C).

In sum, Crossroads GPS's Partial Motion to Dismiss is granted with respect to Counts I and III because APA relief is not available for those Counts.  Count II, however, which challenges the dismissal of the administrative complaint based on the alleged invalidity and unlawfulness of 11 C.F.R. § 109.10(e)(1)(vi), is properly brought under the FECA and the APA.

## IV.    CONCLUSION

For the foregoing reasons, the FEC's Partial Motion to Dismiss is denied, and Crossroads GPS's Supplemental Motion to Dismiss is denied insofar as the plaintiffs may challenge the validity and lawfulness of 11 C.F.R. § 109.10(e)(1)(vi) under the APA, as raised in Count II.  Crossroad CPS's motion is granted in all other respects.  The parties shall submit jointly, by April 14, 2017, a schedule to govern further proceedings in this matter.

Date:  March 22, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[9]     In other words, the D.C. Circuit has already held that APA review is proper in the context of a direct challenge to an FEC regulation, and the Court perceives no reason why the result should differ when a regulation is challenged by a party "affected" by application of the rule, as here.  Indeed, relief as to Count II would be illusory were the plaintiffs required to proceed only under the FECA, which, as noted, does not permit courts to consider the validity of FEC regulations.