**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*, | |
| Plaintiffs, | |
| v. | |
| FEDERAL ELECTION COMMISSION, | Civil Action No.  1:16-cv-00259-BAH |
| Defendant, | |
| CROSSROADS GRASSROOTS POLICY STRATEGIES, | |
| Intervenor-Defendant. | |

**CROSSROADS GRASSROOTS POLICY STRATEGIES' MOTION
FOR A STAY PENDING APPEAL
AND ITS SUPPORTING MEMORANDUM OF LAW**

Crossroads Grassroots Policy Strategies ("Crossroads GPS") respectfully moves this

Court for a stay of its August 3, 2018 Opinion ("Op.") and Order (Dkt. Nos. 42 and 43) pending

final appeal of this case.  (Crossroads GPS has already filed its notice of appeal.  *See* Dkt. No.

44.)  In the alternative, Crossroads GPS requests that this Court stay those portions of its decision

invalidating and vacating the challenged regulation, 11 C.F.R. § 109.10(e)(1)(vi), pending final

appeal.  A proposed order is attached.  As discussed in the accompanying motion, Crossroads

GPS also respectfully asks this Court to expedite briefing on this motion and to rule on the

motion as soon as practicable, but in any event no later than August 30, 2018.

Pursuant to Local Civil Rule 7(m), Crossroads GPS's counsel conferred with Plaintiffs'

counsel concerning this motion and was informed that Plaintiffs' counsel object to this motion.

Crossroads GPS's counsel also contacted counsel for the Federal Election Commission ("FEC")

the day prior to filing, but counsel was unavailable to discuss this motion until next week.

1

## INTRODUCTION

This Court's August 3 opinion vacated a regulation – adopted by the FEC in 1980 and transmitted to Congress for review the same year – that implemented the statutory reporting requirements for non-political committee entities that make independent expenditures.  Even though Citizens for Responsibility and Ethics in Washington ("CREW") only discovered alleged "flaws" in the regulation's text relatively recently, the Court has nevertheless accepted CREW's arguments and invalidated the regulation in the context of reviewing a challenge to the FEC's dismissal of an administrative enforcement complaint filed against Crossroads GPS.  While the Court has deferred vacating the underlying regulation for 45 days, the fact remains that just weeks before a national election, speakers engaging in core First Amendment protected speech – commenting on the actions of the Government and those who lead it – suddenly find themselves adrift as to what rules and protections apply to their past, present, and future political speech. Indeed, this Court readily recognized that there is a "[non-]trivial concern" that "entities engaged in independent expenditures might have inadequate guidance" because of its decision to vacate the regulation in the final weeks before Election Day.  Op. at 98.  And this Court's decision to remand the underlying enforcement case to the agency – which must respond within 30 days – has forced both Crossroads GPS and the FEC to divert valuable resources and energy away from core political speech and agency operations, respectively, and toward a stale administrative enforcement proceeding that falls outside the relevant statute of limitations.

Rather than permit this significant encroachment on First Amendment rights, the proper course is for this Court to stay implementation of its entire 113-page decision pending appellate review.  Not only does this Court's decision raise numerous serious legal questions – which the FEC and the Court have, respectively, described as "complex" and representing a "close call" –

but issuance of a stay would also be consistent with repeated appellate court admonitions against changing the rules governing election-related activity in the final weeks preceding an election. Preservation of the status quo is all the more justified here given that the Court's ruling appears in tension with existing D.C. Circuit precedent: (a) endorsing a narrow construction of a similar reporting regime for electioneering communications; and (b) limiting the courts' role in reviewing FEC complaints dismissed based on prosecutorial discretion grounds.

In short, the challenged FEC regulation has been in effect through nearly 20 federal elections and serious arguments support its validity.  In such situations, the appropriate course is to permit orderly appellate review before completely upending long-established rules that pertain to core First Amendment freedoms, particularly right before an election, or continuing to pursue a stale administrative enforcement action against an entity that fully complied with an existing regulation governing its reporting obligations.

## ARGUMENT

## I.   THIS CASE SATISFIES THE FOUR TRADITIONAL FACTORS FOR A STAY PENDING APPEAL.

In the D.C. Circuit, courts assess four factors when determining whether to grant a motion for a stay pending appeal: "(1) the moving party's likelihood of success on the merits of its appeal, (2) whether the moving party will suffer irreparable injury, (3) whether issuance of the stay would substantially harm other parties in the proceeding, and (4) the public interest." *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 12 (D.D.C. 2014).  As discussed below, each of the four factors supports issuance of a stay here.

### A.   Crossroads GPS Is Likely to Succeed on the Merits on Appeal and, in Any Event, the Court's Opinion Raises Numerous Serious Legal Questions That Support Granting a Stay.

While recognizing that the Court has wrestled with the issues surrounding this case over

many pages and for many months, Crossroads GPS respectfully submits that an appellate court is likely to render a different outcome. This Court's decision runs counter to nearly four decades of established agency practice and settled interpretation and application of the statute. *See, e.g.*, FEC, *Campaign Guide for Corporations and Labor Organizations* (Aug. 1997) at 24 (Dkt. No. 28-1)) (explaining reports are required to identify only "each person who contributed more than $200 *for the purpose of making the independent expenditures*") (emphasis added); FEC Matter Under Review ("MUR") 6696, First General Counsel's Report (Mar. 7, 2014), Joint App'x Part 1 (Dkt. 38) AR173 (noting that the FEC previously decided "not to open a matter where there was no information that a 501(c)(4) organization received 'donations tied to a specific independent expenditure.'").

This Court's decision also downplays – contrary to existing judicial precedent – the unique congressional review process applicable to FEC regulations. The Court goes to great lengths to set aside crucial aspects of the legislative process directly bearing on the reporting requirement at issue here (e.g., the FEC's extensive involvement in the statute's drafting phase, the legislative materials confirming the limited nature of the reporting requirement, etc.). And the Court's decision also stands for the remarkable – and likely unsupportable – proposition that a regulated entity may be subject to sanction even where, as here, the entity fully complied with a longstanding agency regulation.

Moreover, while the Court has tried to distinguish this case from three key D.C. Circuit decisions, Crossroads GPS respectfully contends that these precedents are directly applicable to the case at hand. This Court's analysis was driven by the supposed "broad disclosure goals of Congress" in enacting the reporting requirements, Op. at 77, and the assumption that "Congress expressly intended broad disclosure for not-political committees," *id.* at 88. But in *Center for*

*Individual Freedom v. Van Hollen*, 694 F.3d 108 (D.C. Cir. 2012) ("*Van Hollen I*"), and *Van Hollen v. FEC*, 811 F.3d 486 (D.C. Cir. 2016) ("*Van Hollen II*"), which together upheld a separate-but-related FEC regulation for reporting information about an independent organization's donors, the D.C. Circuit criticized a "district court's invocation of such a sweeping disclosure purpose [as] contradict[ing] the very statute whose purposes it purports to protect," since the law "does not require disclosure at all costs; it limits disclosure in a number of ways." *Van Hollen II*, 811 F.3d at 494–95.

This Court's opinion also is in apparent tension with *CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018), where the D.C. Circuit recently held that FEC decisions to dismiss enforcement cases based on prosecutorial discretion are generally "not subject to judicial review for abuse of discretion." *Id.* at 441. But here, while acknowledging that the FEC's dismissal of the administrative complaint against Crossroads GPS was in fact grounded "in the exercise of [] prosecutorial discretion," Op. at 105, the Court nonetheless subjected it to review. In doing so, the Court mistakenly relied upon two inapplicable exceptions to the non-reviewability principle.

*First*, the Court indicated that dismissal of the enforcement case against Crossroads GPS was reviewable because the FEC's purported failure to fully enforce the statute "rais[ed] the issue [of] whether" the agency had "intentionally 'abdicated'" its responsibilities. Op. at 110. But the Supreme Court has never endorsed this exception. *See Heckler v. Chaney*, 470 U.S. 821, 844 n.4 (1985). As the D.C. Circuit noted in 1989, "the [Supreme] Court [in *Chaney*] stopped short of stating that the presumption of unreviewability is inapplicable in such circumstances." *Safe Energy Coalition v. U.S. Nuclear Regulatory Com.*, 866 F.2d 1473, 1477 (D.C. Cir. 1989); *see also Giacobbi v. Biermann*, 780 F. Supp. 33, 40 (D.D.C. 1992) ("*Chaney* did not purport to decide whether judicial review is available where an agency has 'consciously and expressly

adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'"").

But even presuming an "abdication" exception exists, there still remains "no review available from [an] agency's specific nonenforcement decision . . . or its overall pattern of decisions not to pursue enforcement action" in a particular area. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 783 F.2d 237, 245 (D.C. Cir. 1986). Mere "substantive disagreement with the agency's legal rulings," *Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002), or situations where the government's "enforcement activities may not measure up to plaintiffs' expectations or desires," simply do not represent an abdication of duty by an agency, *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., UAW v. Donovan*, 577 F. Supp. 398, 405 n.12 (D.D.C. 1983), *aff'd in part*, *remanded in part, sub nom.*, 783 F.2d 237 (D.C. Cir. 1986).

As demonstrated in Crossroads GPS's opening brief, CREW's complaint here represents precisely the type of non-judicially reviewable argument other courts have rejected.  In just the past few years alone, the Commission has enforced the independent expenditure donor reporting requirement against a number of organizations.  *See, e.g.*, Conciliation Agreements, MUR 7085 (State Tea Party Express) (Sept. 21, 2016), MUR 6816 (Americans for Job Security) (June 21, 2016), MUR 6816 (The 60 Plus Association, Inc.) (July 7, 2016), MUR 6816 (American Future Fund) (June 21, 2016).  In fact, other than the FEC's dismissal of the administrative complaint in this matter, the record indicates the FEC has declined to open an investigation into an alleged violation of the independent expenditure donor reporting requirement in only one other instance.  *See* FEC Matter Under Review ("MUR") 6696, First General Counsel's Report (Mar. 7, 2014), Joint App'x Part 1 (Dkt. 38) AR173.  In other words,

the FEC appears to have taken enforcement action under the statute as often as it has dismissed matters involving this requirement.  While CREW would clearly prefer that the FEC extend its enforcement efforts and budget to target more speech, that type of decision is left to the agency to decide – subject to further direction from Congress – rather than this Court.

*Second*, the Court concluded that the FEC's dismissal of the administrative complaint against Crossroads GPS is judicially reviewable because the FEC's failure to pursue enforcement was "primarily" based what the Court judged to be its errant interpretation of the underlying statute.  Op. at 110.  But the D.C. Circuit has previously held that for an agency's failure to prosecute to be reviewable, it must be based "*entirely*" on a misreading of the statute.  *CREW*, 892 F.3d at 441 n.11 (emphasis added).  Here, as the Court freely acknowledged in its opinion, the FEC based its decision to dismiss the case on the ground of "prosecutorial discretion."  Op. at 105.

In any event, despite the strength of these combined merits arguments that are likely to prevail on appeal, this "court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [ ] may grant a stay even though its own approach may be contrary to the movant's view of the merits."  *CREW v. Office of Admin.*, 565 F. Supp. 2d 23, 28 (D.D.C. 2008) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).  Instead, particularly where, as here, the other criteria support a stay, the movant need only identify "serious legal questions going to the merits" that are "a fair ground of litigation and thus for more deliberative investigation."  *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986).  In other words, "[w]hat is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo

should be maintained." *Holiday Tours*, 559 F.2d at 844-45.

This Court's August 3 opinion raises an array of important legal questions concerning, among other things, core First Amendment speech concerning political candidates, congressional intent and acquiescence in agency rulemaking, and a regulated party's ability (or lack thereof) to rely upon regulations duly promulgated by an administrative agency.  These "serious legal questions" – which the Court grappled with over 113 pages and in 57 footnotes – warrant a stay even if the Court believes Crossroads GPS's success on appeal is unlikely.  *See, e.g.*, *FTC v. Heinz, H.J. Co.*, No. 00-5362, 2000 WL 1741320, at *2 (D.C. Cir. Nov. 8, 2000) (per curiam) ("'50% plus' likelihood of success" is not needed "to justify relief") (citation omitted).  This is particularly true here not only because the Court's resolution of these issues conflicts with the conclusions of the FEC's professional staff and the agency's Commissioners – none of whom concluded there was reason to believe Crossroads GPS had violated the FEC regulation – but also because the Court's reasoning represents a significant departure in several respects from established understanding of this statute and its implementing regulations over the course of the last four decades.  And as to the FECA's good faith regulatory reliance provision, the Court has already held and acknowledged that its decision to deprive Crossroads GPS and numerous other affected entities of their statutory right to rely on an existing FEC regulation "present[s] a close call."  Op. at 106.[1]

The Court does not abandon any part of its opinion by recognizing that, in touching on so many complex and important first-order legal issues, its ruling raises the types of questions that readily satisfy the first factor of the stay analysis.

---

[1]    Moreover, despite initially recognizing that Crossroads GPS asserted a "constitutional right to rely on a long-accepted regulation," Op. at 22, it does not appear that the Court subsequently analyzed this constitutional issue.

**B.  Absent a Stay, Crossroads GPS and the Public Will Be Irreparably Harmed by the Court's Decision.**

The second and fourth factors of the stay analysis are likewise satisfied because the Court's August 3 decision is chilling core political speech by Crossroads GPS and other similarly-constituted entities and has sown confusion in the weeks immediately preceding a national election.  The extremely abbreviated schedule set by this Court for action by the FEC – both on the underlying enforcement matter and especially the invalidation of the regulation and the shortened schedule for issuing a new rule – will unavoidably create massive disruption among non-political committee entities that have long had the right to engage in limited independent expenditure activity without fear of exposing their benefactors to public disclosure – as long as those benefactors had not designated their support for specific independent expenditure activity.

Like other organizations, Crossroads GPS also needs clarity from the Court to enable the organization to plan its future speech and fundraising appeals.  *See* Affidavit of Steven Law, ¶¶ 7, 8, 13 ("Law Aff."); *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 499 (1982) (stating that additional "clarity" is required where First Amendment rights are implicated).  Depriving Crossroads GPS of the clear guidance and protection of the FEC regulation, *see* Law Aff. ¶ 10, narrows Crossroads GPS's options, exposes it to further litigation by CREW, and chills core First Amendment activity, inflicting irreparable injury as a matter of law.  *See id.* at ¶¶ 10-12; *see also* Campaign *Legal Ctr. v. FEC*, 312 F. Supp. 3d 153, 165 n.7 (D.D.C. 2018) (collecting authority that "[d]isclosure chills speech" and "can seriously infringe on privacy of association and belief guaranteed by the First Amendment"); *Dombrowski v. Pfister*, 380 U.S. 479, 486-87 (1972) (explaining that the "chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution" can be used to show

9

"irreparable injury").  And forcing Crossroads GPS to divert attention and resources into a revived administrative enforcement matter on the eve of an election further compounds this injury.  *See Citizens United v. FEC*, 558 U.S. 310, 327 (2010) (cautioning that the burden of litigation "create[s] an inevitable, pervasive, and serious risk of chilling protected speech"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794 (1988) (finding that "the costs of litigation . . . must necessarily chill speech in direct contravention of the First Amendment's dictates").

Significantly, this disruption and lack of clarity comes during a "critical pre-election period" for Crossroads GPS and similar independent organizations, *Right to Life of Mich., Inc. v. Miller*, 23 F. Supp. 2d 766, 767, 769-70 (W.D. Mich. 1998) (focusing on the "45 days prior to an election"), when the public actually "begins to concentrate on elections" and their speech can have influence, *Citizens United*, 558 U.S. at 334.  Without a stay to keep the FEC regulation in place pending appeal, there can be no doubt that other members of the public will find their speech "stifled" and will lose their "chance of persuading voters" – out of uncertainty or fear of enforcement.  *Id.* at 327.  And not only does this Court's decision place a "considerable burden [and potential] risk[]" on speakers, who may well "choose simply to abstain from protected speech," but it also harms "society as a whole, which is deprived of an uninhibited marketplace of ideas."  *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

In fact, this is exactly what happened in *Van Hollen I*, when another judge of this court invalidated a similar FEC donor reporting regulation for "electioneering communications" ("ECs").  *See Van Hollen v. FEC*, 851 F. Supp. 2d 69 (D.D.C. 2012), *rev'd*, *Van Hollen I*, 694 F.3d 108.  After the district court's initial ruling, groups like Crossroads GPS effectively stopped making ECs.  *See, e.g.*, Law Aff. ¶ 12.  Between the district court's March 30, 2012 decision and

the D.C. Circuit's September 18, 2012 ruling overturning the district court's decision, the EC

reporting requirements applied for approximately 78 separate nominating primaries, primary

runoffs, and conventions that were actually held in various jurisdictions across the country.  *See*

FEC, Electioneering Communications Periods (2012), *at*

https://transition.fec.gov/info/charts_ec_dates_2012.shtml.[2]  During this period, only 11 EC

reports were filed with the Commission.  *See* FEC Form 9 filings, Apr. 1, 2012, through Sep. 18,

2012, *at* https://www.fec.gov/data/filings/?data_type=

processed&min_receipt_date=04%2F01%2F2012&max_receipt_date=09%2F18%2F2012&form

_type=F9.  By contrast, prior to the district court's March 30 ruling, 33 EC reports were filed,

despite there being far fewer primary, primary runoffs, and conventions for which the EC

reporting requirement applied.  Moreover, after the D.C. Circuit's reversal of the district court's

ruling on September 18, 2012, 67 EC reports were filed in connection with the November

general elections.  *See* FEC Form 9 filings, Jan. 1, 2012, through Mar. 30, 2012, *at*

https://www.fec.gov/data/filings/?data_type=processed&min_receipt_date=01%2F01%2F2012&

max_receipt_date=03%2F30%2F2012&form_type=F9 and Sep. 18, 2012, through Nov. 6, 2012,

*at* https://www.fec.gov/data/filings/?data_type=processed&min_receipt_date=09%2F18%2

F2012&max_receipt_date=11%2F06%2F2012&form_type=F9; *see also* FEC, Electioneering

Communications Periods (2012), *supra*.

That is why "[c]ourt orders affecting elections" are particularly disfavored when there is

an "impending election."  *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).  Although the order at

issue in *Purcell* concerned an elections procedure law, *see id.* at 1, courts have extended the

---

[2] This count is only approximate because it is based on congressional nominating primaries, primary runoffs, and conventions only, and does not include any state presidential nominating primaries or conventions that may have been held on separate dates, the inclusion of which would increase this number.  *See id.*

"*Purcell* principle" to decisions, such as this Court's ruling, that dramatically alter the campaign finance landscape shortly before an election.  For example, in *Lair v. Bullock*, the U.S. District Court for the District of Montana enjoined Montana's campaign contribution limits for being unconstitutionally low shortly before the general election.  697 F.3d 1200, 1202 (9th Cir. 2012). But the U.S. Court of Appeals for the Ninth Circuit granted a stay of the district court's order pending appeal, citing, among other reasons, "the imminent nature of the election" and the "importan[ce of] not [] disturb[ing] long-established expectations that might have unintended consequences" during the pre-election period.  *Id.* at 1214 (citing *Purcell*, 549 U.S. at 5-6).  And in *STOP Hillary PAC v. FEC*, a case challenging an FEC regulation, the court emphasized how "'[c]onsiderations specific to election cases' weigh even further against the issuance of injunctions" shortly before the 2016 presidential primaries were to begin.  166 F. Supp. 3d 643, 647-48 (E.D. Va. 2015) (citing *Purcell*, 549 U.S. at 4-5).

This Court acknowledges that its decision will have ramifications far beyond just the existing litigants, agreeing to stay vacatur of the FEC regulation for 45 days "to ensure that not-political committees benefit from regulatory guidance." Op. at 99.  Yet the existing stay is of little comfort in that (a) it effectively expires half-way between August 3 and the November 6 general election; and (b) the Court's order otherwise "declared [the regulation] to be invalid," Order at 2, which calls into question whether Crossroads GPS or the rest of the regulated community may even rely upon the current FEC regulation during the 45-day period.  Moreover, after the 45-day stay period ends, a quarterly report will be due that covers independent expenditures made during the stay period, and it is thus also unclear what donor reporting rule will apply for that quarterly report.  *See* 11 C.F.R. § 109.10(b); FEC Form 5 (Line 4), *at* https://transition.fec.gov/pdf/forms/fecfrm5.pdf.

Given the immense consequences for non-compliance, such uncertainty has already caused tension and confusion.  For example, one prominent law firm that advises a large number of Democratic and progressive advocacy groups has concluded that, during the existing 45-day stay, "organizations engaging in independent expenditure activity can continue to file reports as they have in the past."  Ezra Reese & Shanna Reulbach, *Court Opens Door to Expanded Disclosure for Nonprofits Making Independent Expenditures in Federal Campaigns* (Aug. 8, 2018), at https://www.perkinscoie.com/en/news-insights/court-opens-door-to-expanded-disclosure-for-nonprofits-making.html.  By contrast, immediately following this Court's decision, CREW's Executive Director threatened legal action against those who continue to follow the existing FEC regulation during the current 45-day period:

> Major donors are now on notice that if they contribute to politically active 501(c)(4) organizations, their contributions will have to be disclosed, and if they are not, CREW will pursue enforcement cases with the FEC and, if necessary, in court.

Press Release, *CREW Scores Major Court Victory Against Dark Money*, CREW (Aug. 4, 2018), https://www.citizensforethics.org/press-release/crew-scores-major-court-victory-against-dark-money/.  This sort of confusion and uncertainty does little to provide the clarity Crossroads GPS and the public need and the First Amendment demands, illustrating precisely why a stay is appropriate here.  Indeed, the Court even acknowledges that there is a "[non-]trivial concern" that "entities engaged in independent expenditures might have inadequate guidance" as a result of its decision to vacate the FEC regulation in the final weeks before Election Day.  Op. at 98.

Moreover, the extremely abbreviated schedule virtually ensures that there will be none of the notice and comment that is part of virtually every other administrative rulemaking, *see, e.g., N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) (subjecting interim rule to notice and comment before it would become effective), and should especially be part of

any regulatory process impinging on core First Amendment activity.  *See also Am. Bus. Ass'n v. United States*, 627 F.2d 525, 528 (D.C. Cir. 1980) (explaining that the "'principal purpose' of [the APA is] 'to provide that the legislative functions of administrative agencies shall so far as possible be exercised only upon public participation and notice'").

Instead, the court's ruling creates a disruptive regulatory vacuum – thereby forcing social welfare groups to choose between their constitutional right to engage in a limited amount of political activity or preserve the confidentiality of their benefactors.  The Court's sharply abbreviated deadline for promulgating a new regulation virtually assures there will be little or no public input or even careful evaluation of complex constitutional concerns by the agency staff.  The Court reached this conclusion even though it has identified a number of specific scenarios that will likely require detailed further analysis and has acknowledged that the reporting issue is "complex."  Op. at 88-89, 104 n.53.[3]  Effectively precluding public participation in this type of administrative agency rulemaking – particularly in the electoral and associational privacy contexts – contradicts self-evident authority that the "promulgation process [must provide the] degree of public awareness, understanding, and participation commensurate with the complexity and intrusiveness of the resulting regulations." *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1028 (D.C. Cir. 1978).  Indeed, a sister court in this district has rightly warned and recognized that forcing the FEC to "hastily cobbl[e] together an alternative, interim set of regulations . . . is

---

[3] In addition to raising questions about which donors must be identified under 52 U.S.C. § 30104(c)(2)(C), the Court's reliance on *Buckley*'s vague "earmarked for political purposes" definition for "contributions" raises questions about whether donations made for the following "political purposes" must be identified under § 30104(c)(1): grassroots lobbying campaigns aimed at elected officials; public opinion polling on political issues; scorecards of congressional votes; non-partisan voter registration programs; non-partisan voter turnout and get-out-the-vote efforts; non-partisan communications informing voters when or where to vote; candidate surveys or issue pledges; *etc*.  The FEC's regulatory exceptions to the "contribution" definition, *see* 11 C.F.R. §§ 100.71-100.155, are of little assistance here, and these activities could all arguably be said to "influenc[e]" an election in some way, *see* 52 U.S.C. § 30101(8).

potentially harmful to the public interest." *Emily's List v. FEC*, 362 F. Supp. 2d 43, 59 (D.D.C.

2005), *aff'd*, 170 F. App'x 719 (D.C. Cir. 2005); *see also Mendoza v. Perez*, 72 F. Supp. 3d 168,

173 (D.D.C. 2014) (J. Howell) ("Short-cutting the time for adequate notice and comment

rulemaking [c]ould be shortsighted and end up extending, rather than expediting, the process").

To ensure that Crossroads GPS and all other interested entities are not irreparably harmed by

being effectively excluded from the rulemaking process, the Court should stay its decision

pending appeal in order to integrate the public into whatever FEC rulemaking proceedings, if

any, become necessary as a result of this litigation.[4]

Furthermore, while the Court's opinion downplays the "disruptive consequences"

invalidation of the FEC's regulation will have on organizations filing independent expenditure

reports, Op. at 95, in practice, this may not be so.  First, while the obligation of 501(c)

organizations to report their donors to the Internal Revenue Service has only applied to donors of

$5,000 or more during the tax year, *see* 26 C.F.R. § 1.6033-2(a)(2)(ii)(f), the obligation to report

donors under the FECA, as the Court has interpreted it, applies to donors who have given more

than $200 during the calendar year, or as little as $200 "for the purpose of furthering an

independent expenditure," 52 U.S.C. § 30104(c)(1), (b)(3)(A), (c)(2)(C).  Entities making

independent expenditures likely have not been keeping track of their donors at these levels in a

format that easily translates to FEC reports, for the simple reason that they have had no

---

[4] This is particularly true given the Court's criticisms of the outcome of the FEC's 1980 rulemaking proceeding.  As the Court notes (Op. at 38-39), the specific regulation language ultimately adopted by the FEC was not included in the material put out for public comment in the Federal Register.  Instead, such language was first "circulated internally" after the close of the public comment period.  *Id.* at 39.  Presumably, in the Court's view, had the public seen the subsequent regulatory language and been able to file comments, it would have helped the FEC better tailor its regulation to the statute.  While Crossroads GPS does not agree that the regulation promulgated by the FEC is inconsistent with the statute, in light of its opinion this Court would presumably want to avoid this prior FEC "mistake" here by ensuring that the public has an opportunity to review and comment upon any proposed regulations before they take effect rather than allowing the FEC to enact a new interim regulation effectively  behind closed doors.

expectation that they would have to report donors at such levels.  Second, as this Court noted in

its opinion, the donor identification requirement is *not* "unbounded."  Op. at 55.  Therefore,

unless an organization wishes to report *all* of its donors of more than $200 under Section

30104(c)(1), the organization will have to make extremely difficult *post hoc* judgment calls

about whether each and every $200-or-more donor gave for "political purposes," whatever that

may mean.  *See* note 3, *supra*.  And all of this effort and expense will be unnecessary should this

Court's opinion ultimately be overturned on appeal.

Relatedly, this Court emphasizes in its opinion that a new interim FEC regulation

purportedly promulgated "in accordance with the statute [will] provide[] members of the public

with the information that they need to participate as an informed electorate."  Op. at 97.  But this

does not address the "significant" individual and associational privacy interests for donors and

organizations at stake in this matter.  *See Van Hollen II*, 811 F.3d at 499-501.  Specifically,

donors may end up being reported involuntarily under a new interim rule, whether under Section

30104(c)(1) (which applies to donors going back to the beginning of the calendar year) or under

Section (c)(2)(C), even though such donors gave with the reasonable expectation that they would

not be publicly identified at all – and even though the D.C. Circuit could find on appeal that the

current FEC regulation is valid and consistent with the statute.  In other words, the Court's

decision, if not stayed, will likely create a situation where "[t]he egg has been scrambled and

there is no apparent way to restore the status quo ante."  Op. at 97 (brackets in the original)

(internal citation and quotation marks omitted).  This is precisely the type of situation that courts

find "effectively unreviewable," *In re Sealed Case*, 237 F.3d 657, 665 (D.C. Cir. 2001), and as

justifying injunctive relief, *see Securities Industry and Financial Markets Ass'n v. Garfield*, 469

F. Supp. 2d 25, 41-42 (D. Conn. 2007) (noting that the disclosure bell cannot be unrung,

particularly in the age of the Internet where information "will be indexed by search engines and widely distributed and archived by various Internet companies").  And in many situations, rather than create exposure for their donors, Crossroads GPS and other similarly-situated organizations will have to refrain from speaking at all pending appeal – an irreparable harm that can never be redressed in the event that Crossroads GPS's appeal ultimately proves successful.

Finally, there is a "public interest in 'uniformity in the application of the law'" that will be denied by enforcement of the Court's 45-day deadline.  *FTC v. Cockrell*, 431 F. Supp. 558, 560 (D.D.C. 1977) (citation omitted); *see also FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 859 (D.C. Cir. 1979).  First, the ordinary practice of other courts in this district when invalidating *FEC* regulations is to remand them to the agency for further action without any vacatur at all.  *See, e.g.*, *Shays v. FEC*, 337 F. Supp. 2d 28, 130 (D. D.C. 2004) ("*Shays I*"), *aff'd*, 414 F.3d 76 (D.C. Cir. 2005); *Shays v. FEC*, 508 F. Supp. 2d 10, 71 (D.D.C. 2007) ("*Shays III*"), *aff'd in part*, *rev'd in part and remanded*, 528 F.3d 914 (D.C. Cir. 2008); *Shays v. FEC*, No. 06-cv-01247 (D.D.C. Aug. 26, 2008) ("*Shays III*"), amended order.[5]  Second, vacatur is generally appropriate where needed to preserve the status quo – in other words, it is a remedy often employed to prevent a new, affirmative reporting obligation from taking effect.  *See, e.g.*, *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 78-79 (D.D.C. 2007) (vacating a rule "establishing a new annual reporting requirement for labor organizations").  Here, however, the Court is employing vacatur to take away an existing regulatory reporting standard that is relied upon by advocacy organizations throughout the country and across the ideological spectrum.  In light of the foregoing, Crossroads GPS respectfully submits that the Court should have followed the standard rule and remanded the regulation without vacating it.  *See, e.g.*, *AARP v. EEOC*, 267 F. Supp. 3d

---

[5] The authorities cited in the Court's opinion, describing vacatur of an invalid regulation as a "common remedy," do not address instances in which FEC regulations have been invalidated.  *See* Op. at 93.

14, 37–38 (D.D.C.), *on reconsideration*, 292 F. Supp. 3d 238 (D.D.C. 2017) (declining to vacate regulation where "information cannot be made confidential again").  But because it did not, the Court should stay its decision in order to preserve the status quo as well as Crossroads GPS's and the public's interests in clear campaign finance rules governing constitutionally protected political speech, particularly this close to an election.

### C.  A Stay Will Not "Substantially Harm" CREW, But the Absence of One Could Substantially Harm the FEC.

Although a stay of this Court's August 3 decision would help reduce the harm to Crossroads GPS and the general public, it is clear that a stay would not harm CREW in any meaningful – much less *substantial* – way.  While CREW is doubtless interested in gathering more data about its political opponents, *see, e.g.*, Bill Allison, *CREW's Watchdog Status Fades After Arrival of Democrat David Brock*, Bloomberg (Apr. 11, 2016), this election cycle is no different than the nearly twenty election cycles that proceeded it with the existing FEC regulation in place and that were conducted largely free of CREW's recently discovered critiques of the FEC's reporting requirements.[6]  And the administrative enforcement matter giving rise to this case involved activity that occurred nearly six years ago – *i.e.*, so long ago that it is outside the statute of limitations, *see* 28 U.S.C. § 2462 – meaning that there is no imminent deadline or reason to rush new and additional enforcement and regulatory proceedings.

In contrast to CREW, the Commission could suffer significant harm to its enforcement and rulemaking authority should this case proceed without a stay and the FEC's regulation is vacated.  The Commission has been delegated "primary and substantial responsibility for

---

[6] Notably, CREW did not participate in the 2011 FEC rulemaking process to consider changes to the independent expenditure reporting requirements, further underscoring CREW's lack of need for immediate relief here.  *See* Rep. Van Hollen Petition for Rulemaking to Revise and Amend Regulations Relating to Disclosure of Independent Expenditures (Apr. 21, 2011) at 4, available at http://classic.fec.gov/pdf/nprm/citizensunited/van_hollen.pdf.

administering and enforcing [FECA]," including the "sole discretionary power" to decide whether to initiate an enforcement action.  *CREW v. FEC*, 209 F. Supp. 3d 77, 87 (D.D.C. 2016) (internal quotation marks and citation omitted).  The FEC also "is given extensive rulemaking . . . powers" and is authorized to "formulate general policy with respect to the administration of this Act."  *Buckley v. Valeo*, 424 U.S. 1, 110 (1976) (internal quotation marks and citation omitted).  Not only does this Court's opinion upend these agency responsibilities and duties, but it does so in a context where an appellate court could – and likely will – eliminate the need for the FEC to expend resources on a rulemaking or enforcement proceeding at all.

This Court also considered – but ultimately disregarded – the FEC's concerns that a remand with vacatur could result in "inadequate guidance" for speakers in advance of the 2018 elections.  *See* Op. at 98.  However, the decision to disregard the FEC's insights and recommendation runs contrary to the D.C. Circuit's admonition that a government agency "is in a better position than the court to assess the disruptive effect of vacating [a rule]."  *Chamber of Commerce v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006).  If a stay is not issued, the FEC, rather than prioritizing its efforts on 2018 election law administrative matters and demonstrable violations of federal election laws, will be forced to divert limited agency resources in the final weeks before the 2018 election to reconsidering an administrative complaint barred by the statute of limitations that concerns activities that dates back to 2012 and initiate a rulemaking proceeding concerning a regulation that dates back to 1980 – with the very real prospect that its work will be interrupted or completely undone by a successful appeal.  This type of unilateral, court-driven administrative agency resource re-allocation appears contrary to both judicial precedent and the FEC's interests and statutory responsibilities under FECA.

## II.     IN THE EVENT THE COURT DOES NOT STAY THE ENTIRE CASE PENDING APPEAL, THE COURT SHOULD AT THE VERY LEAST STAY INVALIDATION AND VACATUR OF THE FEC REGULATION.

In the event the Court does not stay its entire opinion and order, the Court should at minimum stay its decision to invalidate and vacate the FEC reporting regulation pending final appeal.  As discussed above, we contend that Crossroads GPS is likely to succeed on appeal and, at the very least, the issue of the regulation's validity involves complex and difficult legal questions that warrant additional consideration on appeal.

An abrupt vacatur of a Commission reporting requirement that the regulated community has relied on for 38 years, especially in the final weeks before Election Day, will create enormous uncertainty for Crossroads GPS and other advocacy organizations across the ideological spectrum that seek to exercise their fundamental First Amendment rights.  As the real-world experience with *Van Hollen I* demonstrated, allowing the vacatur to go into effect at this time will almost certainly mean that a vast number of organizations will be inhibited from making independent expenditures that they might otherwise be able to make under the current FEC regulation during the remaining weeks of the 2018 election cycle.

Additionally, were the FEC to promulgate an interim regulation as suggested by the Court's opinion and order, the public would be irreparably harmed by the lack of notice and comment in the rulemaking proceeding.  Donors to Crossroads GPS and other organizations who may be required to be publicly identified based upon the breadth of the FEC's interim regulation resulting from the vacatur, and who made donations without having any expectation that they would be publicly reported, would also be irreparably harmed.  The Commission would also suffer irreparable harm to its rulemaking authority and prerogative to manage limited agency resources.  And all of this will have been unnecessary if Crossroads GPS ultimately succeeds on

the merits on appeal.  CREW, for its part, will not be substantially harmed by a stay of the vacatur, considering (1) the administrative complaint concerns activities that took place many years ago and that are outside the statute of limitations, and (2) CREW could have sought to have the FEC regulation amended years ago but evidently did not believe it was important enough to do so until waiting and choosing to litigate this matter against Crossroads GPS before the FEC and this Court.

For these reasons, a stay of the Court's invalidation and vacatur of the FEC regulation is warranted under the traditional four factors for granting a stay pending appeal.  *See Akiachak Native Cmty.*, 995 F. Supp. 2d at 12.

## CONCLUSION

For all the foregoing reasons, Crossroads GPS respectfully requests this Court to grant its motion for a stay pending final appeal of the entire case (i.e., both remand of the administrative enforcement proceeding to the FEC and also the invalidation and vacatur of the Commission's regulation).  In the alternative, Crossroads GPS respectfully requests that the Court stay those portions of its decision invalidating and vacating the challenged FEC regulation, 11 C.F.R. § 109.10(e)(1)(vi), pending final appeal.

Respectfully submitted,

Thomas J. Josefiak

/s/ Thomas W. Kirby

J. Michael Bayes (D.C. Bar No. 501845)

Michael E. Toner (D.C. Bar No. 439707)

HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC

Thomas W. Kirby (D.C. Bar No. 915231)

45 North Hill Drive, Suite 100

Andrew G. Woodson (D.C. Bar No. 494062)

Warrenton, VA 20186

Eric Wang (D.C. Bar No. 974038)

Tel.: 540.341.8808

WILEY REIN LLP

Fax: 540.341.8809

1776 K Street, NW

Washington, DC 20006

Tel.: 202.719.7000

Fax: 202.719.7049

*Counsel for Crossroads Grassroots Policy*
*Strategies*

August 24, 2018