## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, *et al.*, )
                    )
       Plaintiffs, )
                    )
       v. )         Civil Action No. 16-00259 (BAH)
                    )
FEDERAL ELECTION COMMISSION, )
                    )
       Defendant, )
                    )
CROSSROADS GRASSROOTS POLICY )
STRATEGIES, )
                    )
       Intervenor-Defendant. )
                    )

—————————————————————————

### PLAINTIFFS' OPPOSITION TO CROSSROADS GRASSROOTS POLICY STRATEGIES' MOTION FOR A STAY PENDING APPEAL

In a one hundred and thirteen page opinion, this Court exhaustively reviewed the arguments of the Federal Election Commission ("FEC") and intervenor-defendant Crossroads Grassroots Policy Strategies ("Crossroads GPS" or "CGPS"), concluding that 52 U.S.C. § 30104(c)(1) and (c)(2)(C) were "unambiguous," Mem. Op. 53, ECF No. 43, and "mandate significantly more disclosure than that required by the challenged regulation, 11 C.F.R. § 109.10(e)(1)(vi)," *id.* at 92. The Court further engaged in a careful analysis about the proper remedy, ultimately finding vacatur was the appropriate relief, *id.* at 94, because, in part, "the challenged regulation has deprived the electorate of donor information that was intended and supposed to be disclosed," *id.* at 96. Nonetheless, out of an abundance of caution, the Court

stayed its decision for 45 days "to ensure that not-political committees benefit from regulatory guidance." *Id.* at 99.[1]

Notwithstanding this Court's considered judgment on the merits of this action and on the timing of the relief it ordered, Crossroads GPS (but not the FEC) has moved this Court to indefinitely stay the entirety of this Court's August 3 judgment, a step that would continue to "depriv[e] the electorate of donor information that was intended and supposed to be disclosed." Mem. Op. at 96. Yet Crossroads GPS provides no valid reason for the Court to further stay its judgment. Crossroads GPS raises no argument that shows a likelihood of success on its appeal and identifies no irreparable injury to itself that results from this Court's order, while its requested stay would cause substantial harm to CREW and the public. Indeed, it merely repeats arguments that the D.C. Circuit and a fellow district court rejected in an identical request to stay an order that also struck down a regulation that narrowed the FECA's disclosure. *Van Hollen v. FEC*, Nos. 12-5117, 12-5118, 2012 WL 1758569 (D.C. Cir. May 14, 2012) (per curiam); *Van Hollen v. FEC*, No. 11-0766, 2012 WL 13042547 (D.D.C. Apr. 27, 2012). Accordingly, plaintiffs Citizens for Responsibility and Ethics in Washington and Nicholas Mezlak (together, "CREW") respectfully requests this Court deny Crossroads GPS's motion.

## ARGUMENT

### I. A Stay pending Appeal is an Extraordinary Remedy

Crossroads GPS begins its motion by ignoring that the relief it seeks is "an extraordinary remedy," *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam); *see also In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012), and it

---

[1] The Court's opinion also found the FEC's dismissal of plaintiffs' administrative complaint was contrary to law and remanded the case to the FEC for further consideration. Mem. Op. 112. Although Crossroads GPS seeks to stay that portion of the order as well, CGPS Mot. 21, the FEC has now acted on remand to once again dismiss the complaint, FEC Resp. to Motions, ECF No. 50, rendering the request to stay that portion of the order moot.

must meet "stringent requirements" to show it is warranted, *Van Hollen*, 2012 WL 1758569.  A

stay pending appeal is "an intrusion into the ordinary process of administration and judicial

review . . . and accordingly is not a matter of right, even if irreparable injury might otherwise

result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and

citation omitted).  As a result, the decision to grant a stay is entrusted to the Court's discretion,

*id.* at 433–34, and the party seeking a stay bears the "heav[y]" burden of "justify[ing] the court's

exercise of such an extraordinary remedy," *In re Special Proceedings*, 840 F. Supp. 2d at 374;

*accord Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936); *Cuomo*, 772 F.2d at 978. Crossroads

GPS has not met that heavy burden.

      A party seeking a stay pending appeal must "'(1) . . . [make] a strong showing that [it] is

likely to succeed on the merits; (2) [show it] will be irreparably injured absent a stay; (3) [show]

the stay will [not] substantially injure the other parties; and (4) . . . [show] the public interest

lies'" in favor of a stay.  *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 480 U.S. 770, 776

(1987)); *accord Doe 1 v. Trump*, No 17-5267, 2017 WL 6553389, at *1 (D.C. Cir. Dec. 22,

2017).  Crossroads GPS fails to show any of these factors favor a stay here.

## II.  Crossroads GPS Fails to Make a Strong Showing of Success on Appeal

      Crossroads GPS first argues for a stay pending appeal because, it asserts, this action

raises "serious legal questions" that are "fair ground for litigation."  CGPS Mot. 3, 7.  Yet the

first factor demands far more than that: it requires that the movant make a "strong showing that

[it] is likely to succeed on the merits" of its appeal.  *Nken*, 556 U.S. at 426; *accord Van Hollen*,

2012 WL 1758569, at *1 (Rogers, J.).[2]  While this case admittedly raises a serious legal

---

[2] Crossroads GPS cites *Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986), for its preferred standard, but that case did not deal with a request to stay pending appeal, *see id.* (considering injunction pending appeal); *see also Cigar Ass'n of Am. v. U.S. Food and Drug Admin.*, No. 1:16-cv-01460, 2018 WL 3304627, at *3

question, merely raising a "'serious legal question' on the merits" alone is not enough to warrant a stay. *In re Special Proceedings*, 840 F. Supp. 2d at 372; *see also Goddard Eng'rs Ass'n v. Nat'l Aeronautics and Space Admin*, 917 F.2d 1313, at *2, *3 (D.C. Cir. 1990) (Table) (citing "serious legal question" standard but rejecting relief where movant had not also shown "a likelihood of success on the merits"). Crossroads GPS's recycled arguments are not enough to show it will meet the high burden it faces to show a likelihood of success in challenging the Court's judgment on the serious legal question here. Nor does its citation to *CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018), a case which relates only to a type of proceeding that has now terminated in Crossroads GPS's favor, justify a stay.

Crossroads GPS first claims it is likely to succeed on the merits by half-heartedly repeating the arguments it made in its summary judgment briefing: that the age of regulation cured its invalidity, *see* CGPS Mot. 4; CGPS Mot. for Summ. J. 45; that the FEC's role in assisting with the amendments to the Federal Election Campaign Act ("FECA") allow it to disregard the statute, *see* CGPS Mot. 4; CGPS Mot. for Summ. J. 42–43; that Congress's consideration of other interests in line-drawing allows the federal agency to disregard that line, *see* CGPS Mot. 5 (citing *Van Hollen v. FEC*, 811 F.3d 486, 494–95 (D.C. Cir. 2016)); CGPS Mot. for Summ. J. 45; that the FEC's reference to discretion in dismissing part of one claim renders the whole case beyond the Court's competency, *see* CGPS Mot. 5; CGPS Mot. for Summ. J. 38; and that the First Amendment requires ignoring the statute's unambiguous text,

---

(D.D.C. July 5, 2018) (noting courts have applied the "substantial legal question" test only to motions for injunctions pending appeal), and its continued application has been called into question, *id.*; *Alcresta Therapeutics, Inc. v. Azar*, No. 18-243 (TJK), 2018 WL 3328577, at *2 n.1 (D.D.C. June 28, 2018). In any case, *Population Institute* found the plaintiff did in fact "show[] a high likelihood of succeeding in their appeal," 797 F.2d at 1066, and it predates *Nken*, which provides the appropriate standard for review of a motion to stay, *see Nken*, 556 U.S. at 426 (movant must make "strong showing" of likely success). Finally, even if the existence of a "serious legal question" was the appropriate standard, it can only justify relief where the movant also shows "the three other factors strongly favor" relief. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). For the reasons stated herein, Crossroads GPS has not made any such showing.

CGPS Mot. 8; CGPS Mot. for Summ. J. 6. The Court considered these arguments to the extent Crossroads GPS raised them and, in its thoroughly reasoned opinion, rejected each. *See, e.g.*, Mem. Op. 22, 76–78, 91 n.47, 92 n.48, 104, 107–10.

"Mere repetition of the [movant's] arguments," however, is not enough to make the requisite strong showing of success on appeal. *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008), *accord United States v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15, 16 (D.D.C. 2003) (rejecting stay where movant "offered no new arguments in its motion, but rather it rehashes arguments that have been rejected"), *stay denied*, No. 03-5019, 2003 WL 1089413 (D.C. Cir. Mar. 6, 2003). A movant must, at least, give some "reason for revisiting the Court's conclusions on the merits of the [movant]'s claims." *Taylor*, 549 F. Supp. 2d at 75. To do this, a movant should provide "new information, authority, or analysis" that would change the outlook of a case. *In re Special Proceedings*, 840 F. Supp. 2d at 373. Crossroads GPS's rehash of rejected arguments fails to offer anything new, its arguments should be rejected for all the reasons this Court outlined in its decision, and it cannot establish a likelihood of success on appeal based on them.

Nor does the one new point that Crossroads GPS's brief does manage to raise show a strong likelihood of success.[3] Crossroads GPS contends that *CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018), *pet. for reh'g en banc filed*, No. 17-5049 (D.C. Cir. filed July 27, 2018), shows reversal of the Court's judgment is probable because that decision held that parties cannot bring a FECA claim to challenge certain dismissals of administrative complaints that are based on prosecutorial discretion. CGPS Mot. 5. Crossroads GPS's arguments miss the mark, however.

---

[3] The FEC submitted a notice of supplemental authority asserting *CREW* deprived the Court of jurisdiction over CREW's FECA Claim. *See* FEC Not. of Suppl. Auth., ECF No. 40. The Court rejected the FEC's argument. Mem. Op. 109–10 & n.57. Crossroads GPS did not join in the notice.

*CREW* found that, notwithstanding FECA's command that all FEC dismissals are subject to judicial review, *Heckler v. Chaney*, 470 U.S. 821, 833 n.4 (1998), limited the plaintiffs' ability to seek review of an FEC dismissal of an administrative complaint under the FECA.  *CREW* did not consider, however, any clam under the Administrative Procedure Act challenging the validity of a regulation.  *CREW*, therefore, cannot show how Crossroads GPS is likely to succeed on the only question relevant here: whether 11 C.F.R. § 109.10(e)(1)(vi) is valid or conflicts with the reporting requirements of the FECA.[4]

Crossroads GPS attempts to bridge this gap by reasserting a failed argument.  It argues that CREW had no standing to challenge the validity of the regulation unless it had a valid claim under the FECA to challenge the dismissal of its administrative complaint as contrary to law. *See* CGPS Mot. 6.  The Court has now twice rejected that argument, *see* Mem. Op. on Mot. to Dismiss, ECF No. 22; Mem. Op. 47–48, and Crossroads GPS provides no reason for the Court to revisit the issue.  Rather, the Court was right that CREW's standing to challenge the regulation exists entirely independent from the question of whether the dismissal of its administrative complaint is reviewable under the FECA.  CREW's standing to challenge the regulation is based on the fact the regulation was "appl[ied]" to CREW when the FEC dismissed CREW's complaint against Crossroads GPS, Mem. Op. 17, and the legality of that dismissal "does not operate to bar a challenge to the validity of the regulation itself," *id.* at 47.[5]

---

[4] As noted, because the FEC has once again dismissed CREW's administrative complaint on remand, that issue concluded in a final judgment in Crossroads GPS's favor.  As the party that was ultimately successful on the FECA claim, Crossroads GPS may not appeal that claim now, *see Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 657 (D.C. Cir. 2013) (only a party "unsatisfied with the action on remand" may challenge the remanded proceedings); *Mall Prop., Inc. v. Marsh*, 841 F.2d 440, 443 (1st Cir. 1988) (noting appeal would be superfluous if agency awarded appellant relief on remand), and any authority going to its likelihood of success on an appeal of that claim is thus irrelevant.

[5] Though not an issue of any relevancy here, Crossroads GPS is also incorrect that *CREW* would have precluded this Court's review of CREW's FECA claim.  As this Court recognized, *CREW* permits review where the agency abdicates enforcement and where the claim of prosecutorial discretion rests on an interpretation of law, which the

In short, Crossroads GPS fails to cast any doubt on this Court's well-reasoned judgment, never mind make out a "strong showing that [it] is likely to succeed on the merits" of its appeal. *Nken*, 556 U.S. at 426. It merely repeats already failed arguments and resorts to an argument that has no bearing on the claim on appeal. That showing is insufficient to warrant the extreme remedy Crossroads GPS requests.[6]

### III. Crossroads GPS Fails to Show it will Suffer an Irreparable Injury Absent a Stay

To justify the extraordinary remedy of a stay, a showing of irreparable harm is crucial, *see Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *FTC v. Church & Dwight* Co., 756 F. Supp. 2d 81, 86 (D.D.C. 2010) (denying stay where defendant failed to identify clearly irreparable harm), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011), even if it is not sufficient to justify a stay alone, *Nken*, 556 U.S. at 427 ("A stay . . . is not a matter of right, even if irreparable injury might otherwise result to the appellant." (internal quotation marks omitted)). To show irreparable harm, a movant's injury "must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co*., 758 F.2d at 674. A movant must point to "the significance of the change from the status quo which would arise in the absence of a stay." *Judicial Watch, Inc. v.*

---

Court found occurred here. Mem. Op. 109–10. Crossroads GPS's responses to those findings do not cast doubt on this Court's conclusion. First, despite Crossroads GPS's contention, review of abdication is possible because the FECA provides for review of all FEC dismissals except where *CREW* prohibits it, and *CREW* did not prohibit review of agency abdication. *See CREW*, 892 F.3d at 440 n.9. Second, adoption of a regulation that is narrower than the statute is a "conscious[] and express[]" adoption of an agency policy to abdicate enforcement of the statute. *Cf. id.* Third, none of the FEC matters Crossroads GPS cited, themselves of only the most tangential relation, show vigorous enforcement by the agency of the terms of the FECA. *Cf.* CGPS Mot. 6. Finally, Crossroads GPS places far too much weight on one adverb in trying to manufacture a conflict between the Court's opinion and *CREW*. The Court was clear that it found a "pervading reliance in [FEC's] reasoning [for dismissal of CREW's 52 U.S.C. § 30104(c)(1) claim] on an invalid regulation." Mem. Op. 10. Indeed, Crossroads GPS quotes nothing else from the FEC's reasoning (rather than its post-hoc judgments) on which prosecutorial discretion was based except for the existence of the invalid regulation. Accordingly, the Court was correct that dismissal below rested "entirely" on the FEC's interpretation of the law. *Cf. CREW*, 892 F.3d at 441 n.11.

[6] Crossroads GPS also falsely asserts that this Court found its arguments regarding 11 C.F.R. § 109.10(e)(1)(vi) presented a "close call." CGPS Mot. 8. The quoted language comes from the Court's discussion of the defendants' argument that prosecutorial discretion rendered CREW's FECA claim unreviewable, Mem. Op. at 105–06, an issue that is now moot as the FEC has dismissed the claim on remand. On the question that is relevant, the Court consistently called Crossroads GPS's (and the FEC's) arguments "unpersuasive" and "unsupported," saying they 'fall[] flat' and "clearly ignor[e]" relevant issues. *See, e.g.*, Mem. Op. 65, 66, 68.

*Nat. Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002). Where the harm asserted

has not yet occurred, the burden is even higher:

> Bare allegations of what is likely to occur are of no value since the court must
> decide whether the harm will in fact occur.  The movant must provide proof that
> the harm has occurred in the past and is likely to occur again, or proof indicating
> that the harm is certain to occur in the near future.  Further, the movant must show
> that the alleged harm will directly result from the action which the movant seeks
> to enjoin.

*Wis. Gas Co.*, 758 F.2d at 674; *District Title v. Warren*, No. 14-1808, 2015 WL 12964656, at *3

(D.D.C. Jan. 9, 2015) (applying *Wisconsin* to motion for stay); *Naegele v. Albers*, No. 03-2507,

2014 WL 12683359, at *2 (D.D.C. Dec. 2, 2014) (same).  Crossroads GPS's bare allegations

here are insufficient to show that any irreparable harm will directly result from the Court's

judgment or is certain to occur.

    First, Crossroads GPS cannot show that the requirement that it report all of its

contributors is an irreparable harm.  As the D.C. Circuit has recognized, "disclosure

requirements [do not] prevent [the movant] from speaking" and thus do not constitute

"irreparabl[e] injur[y]."  *Van Hollen*, 2012 WL 1758569, at *1, *2.  In *Van Hollen*, both the

district court and the D.C. Circuit rejected requests to stay that are identical to the one here: a

request to stay from intervening groups who sought to appeal an adverse decision striking a

regulation that narrowed disclosure in conflict with the FECA.  *See id.*; *Van Hollen*, 2012 WL

13042547, at *1.[7]  Both intervenors there contended that, absent a stay, the invalidation of the

regulation would result in irreparable harm by requiring them to disclose their donors if they

engaged in electioneering communications.  *See Van Hollen*, 2012 WL 13042547, at *2 & n.3.

Yet both the district court and the D.C. Circuit found the groups' desire to avoid disclosure could

not satisfy the requirement to show an irreparable harm.  *Id.* at 3–4; *Van Hollen*, 2012 WL

---

[7] Which is not to say the merits of the two cases are the same.  They are not.  *See* Mem. Op. 89–90.

1758569, at *1.  Crossroads GPS gives no reason for this Court to question the acknowledgment of the D.C. Circuit and the Supreme Court that disclosure "'do[es] not prevent anyone from speaking.'"  *Citizens United v. FEC*, 558 U.S. 327, 366 (2010) (quoting *McConnell v. FEC*, 540 U.S. 93, 201 (2003)).

Nor can Crossroads GPS show irreparable harm by claiming it does not know at this time which of its donors gave for the purpose of influencing elections, that the disclosure requirement is vague, and that it may end up disclosing more donors than technically required.  CGPS Mot. 14, 16.  As an initial matter, *Van Hollen* found that the intervenors failed to show an irreparable injury where the court's decision required the reporting entity to disclose *all* of its donors, regardless of the purpose given, 2012 WL 1758569, at *2, so Crossroads GPS cannot show an irreparable injury from the need to disclose a smaller subset of donors.  Further, Crossroads GPS's concern is not actually about vagueness at all—the requisite purpose is clear—but rather that it may have to decide "closes cases" where it "will sometimes be difficult to determine whether the [determinative] fact . . . has been proved."  *United States v. Williams*, 553 U.S. 285, 305–06 (2008); *see* CGPS Mot. 14 n.3, 16.  That Crossroads GPS, or the FEC in an enforcement action or a court in a citizen suit, will be called upon to make inferences about the purpose of a particular donation to determine whether it must be reported does not render the requirement constitutionally infirm.  To be constitutionally vague, there must be "indeterminacy of precisely what the fact is," *id.*, but there is no such indeterminacy here.  Indeed, the FECA exhaustively spells out what is and is not a contribution, *see* 52 U.S.C. § 30101(8)(A)(i)–(ii), (B)(i)–(xiv), and FEC implementing regulations provide further guidance, 11 C.F.R. §§ 100.71–100.94.  The FEC is also ready to provide advisory opinions for those needing even more help.  52 U.S.C.

§ 30108.[8]  In the end, Crossroads GPS places significant emphasis on this Court's recognition

that a contribution includes monies "earmarked for political purposes," CGPS Mot. 14 n.3, 16;

*see also* Mem. Op. 36, but as this Court noted, the Supreme Court defined "contribution" to

include such earmarked funds for the very purpose of rendering it *not* vague.  Mem. Op. 28, 29

(quoting *Buckley*, 424 U.S. at 78, 80); *see also Mott v. FEC*, 494 F. Supp. 131, 136 (D.D.C.

1980) (recognizing *Buckley* decided "contribution" as interpreted to include donations earmarked

for political purposes was not unconstitutionally vague).  Crossroads GPS cannot claim that the

Supreme Court's own definition is unconstitutionally vague.[9]

    Unable to show that the actual reporting obligations that might be imposed on it are

unconstitutional, Crossroads GPS attempts to dodge this defect in their argument by asserting

that the regulations would nonetheless "chill[]" its speech.  *See* CGPS Mot. 9.[10]  Crossroads

GPS's mere belief that the FECA will chill its speech because it will choose to forgo speech to

avoid the potential consequences does not establish an injury.  *Laird v. Tatum*, 408 U.S. 1, 13–14

(1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific

present objective harm or a threat of specific future harm.").  Rather, a statute's chilling effect is

only cognizable where the chill is the result of uncertainty about the statute's application to the

speech itself; uncertainty in the results of that application simply aren't relevant.  *United*

*Presbyterian Church in the USA v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (explaining

cognizable chill to trigger First Amendment scrutiny must result from "the difficulty of

---

[8] Notably, it appears for all Crossroads GPS's claimed confusion at its disclosure obligations, it has not seen it necessary to ask the FEC for guidance.

[9] Crossroad GPS's contention that it does not know which of its donors gave to influence federal elections is also incredulous where there the record shows it knows which donors, for example, gave to "aid in the election of" a federal candidate.  Mem. Op. 7.

[10] Crossroads GPS asserted "chill" is also questionable, where it does not actually assert it intends to run independent expenditures, but only that it would "like to maintain the ability" to do so without any need to disclose the source of its funds to voters.  *See* Aff. of Steven Law ¶ 10, ECF No. 45-2.

determining the application of a regulatory provision *to that [First Amendment] conduct*"
(emphasis added)); *cf. Dombrowski v. Phister*, 380 U.S. 479, 490–95 (1965) (allowing challenge
to statute where line between permitted and regulated activity was vague).  Crossroads GPS does
not, and cannot, argue that it is uncertain which communications will trigger disclosure, *see
Buckley*, 424 U.S. at 44 (defining independent expenditure in manner to survive vagueness
challenge), and therefore has all the "clarity" it needs to "plan its future speech and fundraising
appeals," GPS Mot. 9.  Nor can Crossroads GPS bootstrap some type of "chill" from the mere
possibility that it may lose contributors if they must be reported.  *United States v. Fin. Comm. to
Re-Elect the President*, 507 F.2d 1194, 1200 (D.C. Cir. 1974) (speculation of chill to donor
activity insufficient to warrant relief); *see also* Aff. of Steven Law ¶ 7 (asserting Crossroads GPS
"could" lose contributions if they must be reported).  Further, even if Crossroads GPS did lose
contributors because they voluntarily chose to avoid association with it, or Crossroads GPS
voluntarily chose not to run independent expenditures so as to avoid reporting, such "self-
censorship resulting from a statute is not enough to render [a law] unconstitutional."  *Fort Wayne
Books, Inc. v. Indiana*, 489 U.S. 46, 60 (1989); *accord Am. Library Ass'n v. Reno*, 33 F.3d 78, 87
(D.C. Cir. 1994).[11]

Moreover, even if the FECA's reporting obligations did chill speech, the Supreme Court
has already found that any such self-censorship is more than justified by the benefits disclosure
provides.  Over the course of numerous decisions, the Court has found the importance of
disclosure laws overcome any chill that disclosure may cause.  *See Citizens United*, 558 U.S. at

---

[11] For this reason, the reduction in electioneering communications after the *Van Hollen* decision does not show any cognizable injury that could have been used to stay its effect, *cf.* CGPS Mot. 11—which, as noted, both the district court and D.C. Circuit refused to do, *see supra* pp. 8–9.  Moreover, Crossroads GPS overstates this effect of the decision, which did not in fact reduce campaign activity, but merely caused "sponsors of political ads to change the wording of their messages to express advocacy explicitly endorsing or opposing candidates."  Kenneth P. Doyle, D.C. Circuit Decision Limiting Political Ad Disclosure Will Stand, *Bloomberg BNA* (Sept. 28, 2016), https://www.bna.com/dc-circuit-decision-n57982077640/.

370 (holding disclosure laws were warranted despite "chill [to] donations to an organization");

*McConnell*, 540 U.S. at 690–92; *Buckley*, 424 U.S. at 68 (recognizing "public disclosure of

contributions . . . will deter some individuals who otherwise might contribute" but nonetheless

"appear[s] to be the least restrictive means of curbing the evils of campaign ignorance and

corruption").  Crossroads GPS's contributors may have thought they could avoid "public

disclosure," CGPS Mot. 9, but it is "difficult to see how [it or they] would be harmed by

complying with the disclosure provisions that the Supreme Court specifically upheld [since

*Buckley*]," *Van Hollen*, 2012 WL 13042547, at *2.  Because Crossroads GPS cannot show

disclosure is itself unconstitutional, it cannot assert irreparable harm based on an alleged loss of

First Amendment freedoms resulting from disclosure*. See Am. Meat Inst. v. U.S. Dep't of

Agriculture*, 968 F. Supp. 2d 38, 77 (D.D.C. 2013) (holding that because "plaintiffs have not

shown the [regulation at issue] violates their rights under the First Amendment," plaintiffs "are

not faced with irreparable harm" (internal quotation marks omitted)); *Edwards v. District of

Columbia*, 765 F. Supp. 2d 3, 19 (D.D.C. 2011) (same).[12]

   Crossroads GPS also claims harm from its purported lack of certainty about the

application of the statute's disclosure requirements to contributions it is currently receiving

during the Court's 45 day stay.  *See* CGPS Mot. 12.  Yet that purported harm, even if it were

cognizable, would not be cured by extension of that stay.  In fact, staying the Court's decision

would only compound that purported injury, as there would be more contributors during the

---

[12] There is only one form of harm from disclosure the Court has found can justify a First Amendment challenge to
the FECA's disclosure provisions:  where disclosure "will subject [disclosed parties] to threats, harassment, or
reprisals," *Citizens United*, 558 U.S. at 367.  But the movant must demonstrate a "reasonable probability" of such
harms.  *Id.*; *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 211 (D.C. Cir. 2009) (rejecting exception to disclosure where
plaintiffs "proffers no evidence of any past incidents" of harassment or attacks).  Crossroads GPS does not assert
that either it or its contributors face any real threat, and thus waives that argument.  *Shands Jacksonville Med. Ctr. v.
Burwell*, 139 F. Supp. 3d 240, 260–61 & n.7 (D.D.C. 2015) (holding that argument not raised in plaintiffs' opening
brief was waived).  Nor is there any indication they could proffer evidence of real threats, rather than merely the
exercise of other individuals' First Amendment rights to criticize Crossroads GPS and its contributors.

lengthened stay who will not be certain about whether they will be identified after vacatur. Accordingly, as there would be no change in the status quo on this issue "in the absence of a stay," a stay is not warranted. *Judicial Watch, Inc.*, 230 F. Supp. 2d at 15.

Crossroads GPS next attempts to manufacture an injury by asserting that it has a protected right to submit public comments in a rulemaking process; a right it says was denied because this Court did not remand the question of the proper scope of disclosure back to the FEC. *See* CGPS Mot. 13–14; *but see Shays v. FEC*, 511 F. Supp. 2d 19, 31 (D.D.C. 2007) (holding agency need not develop the law through rulemaking rather than through adjudication). It was not the Court's judgment, however, that deprived Crossroads GPS of its opportunity to weigh in on the scope of disclosure; rather, it was Congress's decision to unambiguously decide that scope. Mem. Op. 92, *see also City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. 290, 296 (2013*)*.  To the extent Crossroads GPS seeks rulemaking on any issue that was not the subject of this Court's decision, nothing in the decision prevents Crossroads GPS from petitioning the FEC for relief.  Crossroads GPS points to nothing, however, to show that it has a right to second-guess Congress's unambiguous commands in the course of some later rulemaking.

Finally, Crossroads GPS attacks the propriety of the Court's decision to find that vacatur, rather than remand, was the appropriate remedy.  CGPS Mot. 17 (asserting remand was the more "ordinary practice . . . when invalidating FEC regulations" (emphasis omitted)); *but see Shays v. FEC*, 414 F.3d 76, 95, 100–02 (D.C. Cir. 2005) (vacating FEC regulations).  This is not a proper motion for Crossroads GPS to ask this court to reconsider its judgment, and Crossroads GPS merely reveals its purposes here is to obtain a remand by default.  This Court, however, already found that a remand would be an "indefinite stay on the effectiveness of the court's decision"

13

where "this invalid regulation has persisted . . . in the face of internal acknowledgement by [the FEC] of potential shortfalls."  Mem. Op. 98–99 & n.52.  Finally, as the Court found Congress spoke to the precise issue about the amount of reporting required by those making independent expenditures, there is no need or opportunity for either FEC rulemaking or public comment on that issue.  *Id.* at 94–95.  The Court was correct that vacatur was the appropriate remedy, and Crossroads GPS identifies nothing to support revisiting that decision.

In sum, Crossroads GPS fails to prove harm will immediately befall it as a direct result of this Court's decision that it must report all of its contributors rather than merely a small and nonexistent subset of contributors.  *See* Mem. Op. 8.  The FECA's disclosure obligations are constitutional, and thus Crossroads GPS cannot assert injury in complying with them.  Thus, Crossroads GPS fails to show any irreparable harm that will directly result from this Court's order.  *Wis. Gas*, 758 F.2d at 674.[13]

## IV. CREW will Suffer Substantial Harm From a Stay

Even if Crossroads GPS could show any chance of success on appeal or any injury to it in the absence of a stay, the third factor—whether a stay will work substantial injury to the other parties, *Nken*, 556 U.S. at 426—weighs heavily against the grant of a stay here.  CREW has sought relief from the burdens of this unlawful regulation for years.  CREW raised the regulation's inconsistency with the statute with the FEC when it filed the administrative complaint in this matter in November 2012, Mem. Op. 5, and has been litigating its validity before this Court for more than two-and-a-half years.  CREW reminded the FEC of the

---

[13] At times, Crossroads GPS appears to assert that the FEC will suffer irreparable harm in the absence of a stay, *see* CGPS Mot. 18, 20—yet Crossroads GPS has no standing to seek relief on behalf of the FEC. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (party may only seek "to protect against injury to the complaining party").  Moreover, the fact that the FEC has taken no position on Crossroads GPS's motion undercuts any conclusion that the FEC believes it is currently suffering irreparable harm. *See* FEC Resp. to Motions, ECF No. 50.

inconsistency between the regulation and the statute in 2015.  *See* CREW, Comments in

Response to Advance Notice of Proposed Rulemaking on Earmarking, Affiliation, Joint

Fundraising, Disclosure, and Other Issues (Jan. 15, 2015) at 3-4, http://sers.fec.gov/fosers/

showpdf.htm?docid=312990.  By this motion, Crossroads GPS intends to subject CREW to this

unlawful regulation for years more, depriving CREW of its relief "for an indefinite period of

time, potentially for years."  *Belize Social Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C.

Cir. 2012) (internal quotation marks omitted).

      CREW is very much injured by the continued existence of this regulation.  In enacting

the FECA, Congress provided CREW with a right to information about the contributors to

organizations that engage in explicit campaigning.  *See FEC v. Akins*, 524 U.S. 11, 21 (1998).

CREW, however, is deprived of the information to which it is entitled every time a qualifying

independent expenditure is made and the maker's contributors are not reported consistent with

the statute.  *Id.*; *see also Van Hollen*, 2012 WL 1758569, at *1 (finding plaintiff would be

substantially harmed by a stay by being deprived of information to which he was entitled under

the FECA.  Moreover, by being deprived of that information, CREW is severely hindered in its

work to "ensur[e] the integrity of government officials, protect[] our political system against

corruption, and reduc[e] the influence of money in politics."  Mem. Op. 5.  Without knowledge

about who is behind significant campaign expenditures, it is impossible for CREW to determine

and inform others about "[t]he source of a candidate's financial support."  *Buckley*, 424 U.S. at

67, 76; *SpeechNow.org v. FEC*, 599 F.3d 686, 698 (D.C. Cir. 2010) (noting purpose of disclosure

is to reveal "who is speaking about a candidate and who is funding that speech").

      Crossroads GPS contends CREW will not suffer harm from a stay because CREW has

not had access to this information before.  CGPS Mot. 18.  Crossroads GPS cites nothing,

however, for its proposition that a deprivation ceases to cause injury if it is long incurred. CREW is entitled to know the contributors behind every future qualifying independent expenditure, and CREW's deprivation of such information for past communications, even where such deprivation is incurable,[14] does nothing to mitigate the injury to CREW from every new independent expenditure report that omits the information required by 52 U.S.C. § 30104(c)(1) and (c)(2)(C), including those that would be issued during any extended stay here.

It is indisputable that the stay Crossroads GPS seeks would deprive CREW of the information to which it is legally entitled—indeed that is the whole reason Crossroads GPS is seeking a stay. *See* CGPS Mot. 9. Consequently, the substantial harm that a stay would cause to CREW is readily apparent and weighs against granting a stay.

## V. The Public Interest Lies Against a Stay

Finally, the public interest here weighs heavily against a stay. The public interest is a "uniquely important consideration" in evaluating a request for the extraordinary remedy of a stay pending appeal. *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980); *see also In re Special Proceedings*, 840 F. Supp. 2d at 367; *National Ass'n of Mfrs.*, 549 F. Supp. 2d at 77; *Shays v. FEC*, 340 F. Supp. 2d 39, 54 (D.D.C. 2004). A long line of cases unequivocally show the public's interest is in knowing "who is speaking about a candidate and who is funding that speech." *SpeechNow.org*, 599 F.3d at 698.

"Campaign finance law has long recognized the value of disclosure as a means of enabling the electorate to make informed decisions about candidates, to evaluate political messaging, to deter actual, or the appearance of, corruption, and to aid in enforcement of the ban

---

[14] CREW's FECA claim would have given CREW access to this information about some of Crossroads GPS past independent expenditures if the FEC chose to enforce. As the FEC chose to dismiss, however, the issue is now moot.

on foreign contributions, which may result in undue influence on American politicians."  Mem.

Op. 1 (citing *Citizens United*, 558 U.S. at 366–71; *Buckley*, 424 U.S. at 64–68; *SpeechNow.org*,

599 F.3d at 689).  As the Court recognized, the statutory provisions at issue here "are squarely

'part of Congress's efforts to achieve "total disclosure" by reaching "every kind of political

activity" in order to ensure that voters are fully informed and to achieve through publicity the

maximum deterrence to corruption and undue influence possible.'"  Mem. Op. 2 (quoting

*Buckley*, 424 U.S. at 76 (in turn quoting S. Rep. No. 229, 92d Cong., 2d Sess. at 57 (1971)).

Included in those interests is "the government's interest [] in preventing foreign influence over

U.S. elections."  Mem. Op. 3 (quoting *Bluman v. FEC*, 800 F. Supp. 2d 281, 283, 288 n.3

(D.D.C. 2011)).

Crossroads GPS contends, however, that the public also has an interest in anonymous

speech, and that disclosure might reduce the amount of speech created.  CGPS Mot. 10.

Congress, however, considered these interests and decided they weighed in favor of requiring

disclosure of "all contributions."  52 U.S.C. § 30104(c)(1).  Thus, the FECA itself reflects the

public's overwhelming interest in disclosure.  *Taylor*, 549 F. Supp. 2d at 77 ("[T]he views of

'Congress, the elected representatives of the entire nation,' are 'another sense by which the

public interest should be gauged.'" (quoting *Cuomo*, 772 F.2d at 978)).

The stay requested by Crossroads GPS would severely undermine the public's interest,

continuing the deprivation of the public's knowledge about the sources of huge sums spent in our

elections.  *See* Outside Spending by Disclosure, Excluding Party Committees, OpenSecrets.org

(last visited Sept. 7, 2018), https://www.opensecrets.org/outsidespending/disclosure.php

(showing $56 million spent on election campaigning without disclosure in the 2018 election

cycle so far).[15]  At a time of significant interference in our elections by foreign powers, that

deprivation is particularly worrisome.  *See, e.g.*, Senate Select Committee on Intelligence, The

Intelligence Community Assessment:  Assessing Russian Activities and Intentions in Recent

U.S. Elections (July 3, 2018), https://www.burr.senate.gov/imo/media/doc/SSCI%20ICA%

20ASSESSMENT_FINALJULY3.pdf (finding Russia engaged in covert attempts to influence

recent U.S. elections through funding campaign communications).  Indeed, the stay Crossroads

GPS requests would almost certainly deprive voters in the next federal election of information

that Congress determined was essential for them to have.  A stay here would only serve to do

immeasurable damage to the public, putting the very "free functioning of our national

institutions" at risk.  *Buckley*, 424 U.S. at 66.  That is why both a fellow district court and the

D.C. Circuit have denied stays of a decision that upheld the public's interest in campaign finance

disclosure where it was challenged on appeal.  *Van Hollen*, 2012 WL 1758569, at *3; Mem. Op.

4; *Van Hollen*, 2012 WL 13042547, at *2.

　　　In response, Crossroads GPS cites the principle that courts should hesitate to change

election procedures shortly before an election, lest it result in "voter confusion and consequent

incentive to remain away from the polls."  *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  That

principle has no application here.[16]  First, Crossroads GPS fails to show how a change that will

result in *more* information being made available to voters could result in voter "confusion."  *Cf.*

---

[15] OpenSecrets.org compiles data from official FEC reports. While it reports the amount of money spent on elections without disclosure, OpenSecrets.org does not break out the amounts of that money that reflect independent expenditures or other types of campaign spending, like electioneering communications.  Nonetheless, other data shows that a significant amount of the totals spent by non-candidate committees or party groups in the 2018 election cycle are in the form of independent expenditures.  *See* Total Outside Spending by Election Cycle, Excluding Party Committees, OpenSecrets.org (last visited Sept. 7, 2018), https://www.opensecrets.org/outsidespending/cycle_tots.php?cycle=2018&view=Y&chart=N#summ (reporting outside groups have spent $299.1 million in the 2018 election cycle so far).

[16] Moreover, to the extent it does, it only favors denying the stay Crossroads GPS seeks, which stay would deny voters information to which they are entitled and confuse voters about the sources of candidates' support.

*Purcell*, 549 U.S. at 7; *STOP Hillary PAC v. FEC*, 166 F. Supp. 3d 643, 647 (E.D. Va. 2015)

(refusing to enjoin provision designed to "alleviate the constant public confusion surrounding

Political Action Committees" by preventing non-authorized PACs from using candidate names

in their titles).[17]   Second, the change in law effected by this Court's decision does not serve to

upset expectations, leaving parties at a comparative disadvantage.   Unlike the candidates in *Lair*

*v. Bullock*, 697 F.3d 1200 (9th Cir. 2012), Crossroads GPS has not been placed at a fundraising

disadvantage, finding itself needing to unexpectedly play catchup in the final weeks before an

election against an opposing candidate who received a surprising windfall, *id.* at 1214.

Crossroads GPS is still free to spend as much as it previously had planned on independent

expenditures.

Moreover, Crossroads GPS shows no reason why this Court's judgment, reached many

months before the upcoming mid-term election, impacts an "*impending* election."   *Purcell*, 549

U.S. at 5 (characterizing election within five weeks of decision as impending); *see also Laird*,

697 F.3d 1200 (refusing to issue order within three weeks of election).   Crossroads GPS would

have this Court's limited concession to the group's demands work against the Court, CREW, and

the public, implying the Court's limited stay of its mandate for 45 days means that the proper

time for assessment is when that stay runs out on September 17.   CGPS Mot. 12.   Yet, given

*Purcell*'s concern was with upset expectations, it is absurd to treat September 17 as the operative

date.   Voters and regulated parties had notice no later than August 3 (and likely well before then,

---

[17] Crossroads GPS mischaracterizes *Right to Life of Mich., Inc. v. Miller*, 23 F. Supp. 2d 766 (W.D. Mich. 1998), a case which did not involve a refusal to issue relief within 45 days of an election.  Rather, the question there was whether a state statute was constitutional when it regulated all communications referring to a candidate within 45 days of an election.  *See id.* at 768 (subjecting communications to regulation if they occur "45 days prior to an election").  The court found it was not.  *See id.*; *but see McConnell*, 540 U.S. at 127 (finding ads airing within 60 days of election "confirmed" conclusion "that such ads were specifically intended to affect election results").  Even assuming 45 days was a magic period in which relief could not issue, both this Court's order and the stayed vacatur of the regulation will have occurred outside that 45-day window.

*see, e.g.*, Mem. Op. 107) that the regulation was invalid and that independent expenditure reports must meet the requirements of 52 U.S.C. § 30104(c)(1) and (c)(2)(C).

Courts have also been willing to make rulings impacting disclosure substantially similar to this Court's August 3 judgment at times far closer to impending elections.  In *Van Hollen*, the district court invalidated an FEC regulation limiting disclosure by those airing electioneering communications within *four* days of three elections, *see Van Hollen v. FEC*, 851 F. Supp. 2d 69 (D.D.C. Mar. 30, 2012); *see also* FEC, 2012 Presidential Primary Dates and Candidate Filing Deadlines for Ballot Access (June 18, 2012), https://transition.fec.gov/pubrec/fe2012/2012pdates.pdf (hereinafter, "FEC 2012 Election Dates") (showing Maryland, Wisconsin, Washington D.C. primary elections on April 3, 2012), and within twenty-five days of five more elections, *see id.* (showing Delaware, New York, Pennsylvania, Rhode Island, Connecticut primary elections on April 24, 2012).[18]  Nonetheless, the district court refused to stay its decision, issuing that ruling on April 27, within days of seven more elections, *see id.* (showing primary elections on May 8, 15, and 22, 2012); *Van Hollen*, 2012 WL 13042547.  The D.C. Circuit also rejected a stay, issuing its decision on May 14, 2012, within days of six more primary elections.  *Van Hollen*, 2012 WL 1758569; FEC 2012 Election Dates (showing primary elections on May 29 and June 5, 2012).  Finally, the D.C. Circuit issued its ruling on the merits, reversing the district court and thus altering the reporting requirements, on September 18, 2012, *Ctr. for Ind. Freedom v. FEC*, 694 F.3d 108 (D.C. Cir. 2012), within the sixty-day window for electioneering communications for the 2012 general election, *see* FEC 2012 Election Dates.

---

[18] Electioneering communications, unlike independent expenditures, are defined partly by the time in which they run before an election.  *See* 52 U.S.C. § 30104(f)(A)(i)(II)(aa) (providing window for electioneering communication regulation of 30 days before a primary and 60 days before a general election).

Notwithstanding the impending elections, both the district court and the D.C. Circuit had no concern with issuing these decisions impacting campaign disclosure.

In sum, the relief Crossroads GPS seeks—the continued and perhaps indefinite violation of voters' statutory right to information critical to the operation of our democracy—would do immense damage to the public interest.  That alone is sufficient reason for the Court to deny Crossroads GPS's motion.  *See Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980) ("Courts of equity may, and frequently do, . . . withhold relief in furtherance of the public interest . . . .").

## CONCLUSION

Crossroads GPS's motion for the "extraordinary remedy" of an indefinite stay pending appeal fails to meet its "heav[y]" burden.  *In re Special Proceedings*, 840 F. Supp. 2d at 374; *accord Landis*, 299 U.S. at 255–56; *Cuomo*, 772 F.2d at 978.  The motion fails to show any of the relevant factors support a stay; rather it merely seeks relief that will allow it to continue to violate the law and deprive voters of essential information for the "free functioning of our national institutions." *Buckley*, 424 U.S. at 66.  The Court's well-reasoned decision appropriately found 11 C.F.R. § 109.10(e)(1)(vi) contradicts the unambiguous terms of the FECA, and the public's overwhelming interest in disclosure of campaign spending supports the expedient entry of the Courts' judgment.

Dated:  September 7, 2018.                    Respectfully submitted,

                                             */s/ Stuart McPhail*
                                             Stuart C. McPhail
                                             (D.C. Bar No. 1032529)
                                             *smcphail@citizensforethics.org*
                                             Adam J. Rappaport

(D.C. Bar No. 479866)
*arappaport@citizensforethics.org*
Citizens for Responsibility and Ethics
  in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Telephone: (202) 408-5565
Fax: (202) 588-5020

*Counsel for Citizens for Responsibility and*
  *Ethics in Washington and Nicholas Mezlak*