UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*,<br><br>    Plaintiffs,<br>    v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>    Defendant,<br><br>CROSSROADS GRASSROOTS POLICY STRATEGIES,<br><br>    Intervenor-Defendant. | Civil Action No.  1:16-cv-00259-BAH |

**CROSSROADS GRASSROOTS POLICY STRATEGIES' REPLY
TO PLAINTIFF'S OPPOSITION TO THE MOTION
<u>FOR A STAY PENDING APPEAL</u>**

Crossroads Grassroots Policy Strategies ("Crossroads GPS") respectfully replies to CREW's Opposition ("Opp.") to its Motion for a Stay Pending Appeal.  CREW's rhetoric notwithstanding, it is clear that the Court's existing 45-day stay is inadequate, that it should be extended pending this appeal, and that the Court should confirm that speakers may rely upon the regulation during the pendency of the appeal.

Vacating a foundational reporting regulation just weeks before the upcoming November election obviously threatens serious and irreparable injury.  This is true for Crossroads GPS as well as the public, which is denied the speech of groups that will be compelled to restrain constitutionally protected and statutorily permitted speech because of sudden uncertainty over the standards ensuring the privacy of donors to statutorily defined nonpolitical organizations.  The Court acknowledged this confusion and injury when it stayed its vacatur for 45 days, and two commissioners on the Federal Election Commission ("Commission" or "FEC") similarly

1

have warned "the Court's decision is already causing confusion.  Even though the vacatur has not yet gone into effect, members of the public are in doubt as to whether they can rely on the challenged regulation because the court declared it legally invalid."  FEC Chair Caroline C. Hunter and Commissioner Matthew S. Petersen, *Statement on CREW v. FEC,* No. 16-cv-259 (Sept. 6, 2018).[1]

As the commissioners further explained, the Court's hope that a short stay would lead the Commission to adopt a pre-election interim regulation will not materialize because (i) systemic constraints, including a mandatory 30-day congressional review period, preclude such rapid Commission action, and (ii) several commissioners believe the existing regulation remains lawful and expect it will be vindicated on appeal.

Respectfully, Crossroads GPS's appeal has great merit.  Far from demonstrating the regulation is invalid under *Chevron* step one, the Court issued 113 pages of complex construction that relied heavily on the same policy arguments the D.C. Circuit recently rejected when it upheld a similar Commission disclosure regulation.  *See Van Hollen v. FEC*, 811 F.3d 486 (D.C. Cir. 2016).  Moreover, after studying the Court's analysis, two of four commissioners remain convinced "the court should have upheld the Commission's regulation as a reasonable interpretation of the [statute]."  Hunter and Petersen, *supra*.  Finally, CREW acknowledged in its opposition that it first articulated the statutory reading it now claims to be clear only in 2012.  Opp. (Dkt. No. 52) at 14.  Clear statutory subsections do not require 113 pages to parse, do not divide their administrative agency's commissioners, and do not reveal newly-discovered "clarity" decades later.

---

[1] https://www.fec.gov/resources/cms-content/documents/Statement_of_Chair_Hunter_and_Commissioner_Petersen_in_CREW_v._FEC.pdf.

After 38 years and 19 elections without the donor information vacatur supposedly will produce, CREW cannot plausibly claim that allowing a few more months for orderly appellate review will seriously injure it. This Court therefore should grant a stay pending appeal and also confirm that speakers may rely upon the regulation throughout the appellate process.

**I.    CROSSROADS GPS AND CREW AGREE THAT, AT A MINIMUM, THIS CASE RAISES A "SERIOUS LEGAL QUESTION" ON THE MERITS.**

A movant may obtain a stay either by demonstrating "a combination of probable success and the possibility of irreparable injury" or that the court has "ruled on an admittedly difficult legal question and . . . the equities of the case suggest that the status quo should be maintained." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977); *see also Dunlap v. Presidential Adv. Comm'n on Election Integrity*, No. CV 17-2361, 2018 WL 3150217, at *25 (D.D.C. Jun. 27, 2018); *Arpaio v. Obama*, 27 F. Supp. 3d 185, 197 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Washington v. Cheney*, 577 F. Supp. 2d 328, 335 (D.D.C. 2008).[2] Under the second formulation, it "will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, [and] difficult as to make them a fair ground of litigation and thus for more deliberative investigation." *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting *Holiday Tours*, 559 F.2d at 844). Indeed, "potentially persuasive authority for its legal position" may suffice. *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 317 F.

---

[2]    This Court has even observed that, under existing D.C. Circuit precedent, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 6 (D.D.C. 2015) (citing *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–1292 (D.C.Cir.2009)); *Stop This Insanity, Inc. Employee Leadership Fund v. FEC*, 902 F. Supp. 2d 23, 30 (D.D.C. 2012), *aff'd*, 761 F.3d 10 (D.C. Cir. 2014) (discussing this Court's application of this principle to another case involving the FEC). "For example, if the movant makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success." *Davis*, 571 F.3d at 1292.

Supp. 3d 555 (D.D.C. 2018) (applying "binding [Circuit] precedent" and quoting from *John Doe Co. v. Consumer Fin. Protection Bureau*, 849 F.3d 1129, 1132 (D.C. Cir. 2017) in finding that "compelled disclosures" presented a "serious legal question" justifying preservation of regulatory status quo pending appeal); *see also Pan Am Flight 73 Liaison Grp. v. Dave*, 711 F. Supp. 2d 13, 37 (D.D.C. 2010), aff'd, 639 F.3d 1102 (D.C. Cir. 2011) (finding serious question test met where court was first to interpret a law).

As explained below and earlier, *see* Mot. at 3-8, Crossroads has a strong likelihood of success on appeal. Moreover, CREW conceded in its opposition that this case "admittedly raises a serious legal question." Opp. (Dkt. No. 52) at 3-4. That fact alone is sufficient to tip the first stay factor in Crossroads GPS's favor.[3] And, as discussed in the next section, Crossroads GPS is likely to ultimately succeed on appeal.

## II. CROSSROADS IS LIKELY TO SUCCEED ON APPEAL.

Crossroads GPS has a strong likelihood of success on appeal. Crossroads GPS's motion for summary judgment brief (Dkt. No. 28 at 8-15) reviewed the legislative history of 52 U.S.C.

---

[3] In addition to its other arguments, CREW cites (Opp. at 4) the D.C. Circuit's unpublished decision in *Goddard Eng'rs Ass'n v. Nat'l Aeronautics and Space Admin.*, 917 F.2d 1313, at *2-3 (1990), to argue that the moving party must also show a "likelihood of success on the merits" even where they have identified a "serious legal question." Even apart from the concerns with citing such an unpublished decision, *see generally* D.C. Cir. Rule 32.1(b)(1)(A), the Court still indicated that the movant would have been eligible for a stay had it met the "serious legal question" standard. *Goddard Eng'rs Ass'n*, 917 F.2d 1313, at *2.

Also, in a footnote, CREW initially tries to avoid the *Population Institute* and *Holiday Tours* decisions by claiming there is a distinction between the test for a stay and injunction pending appeal. Opp. at 3 n.2. But the "test for a stay or injunction pending appeal is essentially the same," *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (collecting authority), as the D.C. Circuit long ago concluded that the "serious legal question" test applies to all forms of "interim injunctive relief, whether by preliminary injunction or by stay pending appeal," *CREW*, 577 F. Supp. 2d at 335, 336. *See also Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 71 n.1 (D.D.C. 2008) (explaining that the "test for a stay or injunction pending appeal is essentially the same" as the test for a preliminary injunction, 'although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms favors a stay[.]'").

§ 30104(c)(1) and (c)(2)(C) showing that the 1979 Amendments merely consolidated the previously separate requirements for contributors to and the makers of a particular independent expenditure to report their respective contributions and spending.  Crossroads GPS also illustrated how Congress's alternating use of the articles "an" and "the" justify the FEC's longstanding statutory construction.

Crossroads GPS further detailed how the Commission transmitted the challenged regulation to Congress under a special congressional review provision, how Congress did not disapprove the rule, how the Commission consistently interpreted and enforced the statute and implementing regulation for more than 38 years, and how Congress amended the independent expenditure reporting statute six times without disturbing the Commission's long-standing interpretation embodied in the regulation.

Rather than further engage with these abundant authorities, CREW protests (at 4-5) that Crossroads GPS's reliance upon the strength of its earlier arguments is insufficient to justify a stay pending appeal.  But CREW knows better.  Another court in this district granted "CREW's motion for a stay pending appeal [notwithstanding that it] 'offer[ed] no new arguments in its motion, but rather rehashe[d] arguments that have been rejected.'" *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 565 F. Supp. 2d 23, 28 (D.D.C. 2008).  And CREW's citation to *In re Special Proceedings*, 840 F. Supp. 2d 370, 373 (D.D.C. 2012), undermines its argument further, as that case actually holds that no new arguments or facts are necessary to justify a stay where, *inter alia*, the court's initial decision was a "close call."

CREW also makes two other merits arguments that are easily dispatched.

    A.    <u>CREW and the Court Misconstrue the Statute by Misreading *Buckley*</u>.

CREW and the Court mistakenly rely on the Supreme Court's definition of a "contribution" in *Buckley v. Valeo*, 424 U.S. 1, 78 (1976) to construe subsection 30104(c)(1) to require the reporting of funds "that are earmarked for political purposes." Opp. at 10;[4] Memo Op. at 28-30. At the same time, the Court articulated at least three not entirely consistent definitional standards for the term "contribution," *see* Memo Op. at 55, 56, 61, none of which recognized that *Buckley* construed "contributions" in this context as funds given to be converted to independent expenditures.

As *Buckley* explained, 2 U.S.C. § 434(e) – the predecessor of the statutory provision at issue here – imposed "disclosure requirements . . . on <u>spending that is unambiguously campaign related</u> . . . [that] takes the form of independent expenditures <u>or of contributions to an individual or group</u>" that makes independent expenditures. 424 U.S. at 81 (emphasis added).[5] On the prior page, *Buckley* uses the phrase "spending that is unambiguously campaign related" to refer to "only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate" (i.e., an independent expenditure). *Id.* at 80. Therefore, when *Buckley* used shorthand to describe section 434(e)'s contributor reports as applying to "contributions earmarked for political purposes," *id.*, "[t]he only contributions . . . with which the *Buckley* Court

---

[4]     CREW's citation here to *Mott v. FEC*, 494 F. Supp. 131, 136 (D.D.C. 1980) for the proposition that "*Buckley* decided 'contribution' as interpreted to include donations earmarked for political purposes was not unconstitutionally vague" also is inapposite. *Mott* specifically addressed "the definition of 'contributions' . . . as it applies to <u>donations by a person to a political committee</u> made for the purpose of enabling that committee to undertake independent expenditures." 494 F. Supp. at 136 (emphasis added). However, as CREW has acknowledged in its D.C. Circuit filing (Doc. No. 1749810 at 4 n.4), "<u>all</u> funds donated to a political committee are contributions," while the scope of donations to a non-political committee making independent expenditures is more limited (emphasis added).

[5]     As CREW acknowledges, the current statute merely "shifted [the] burden [of the contributors who formerly reported their contributions separately] on to those making <u>the</u> independent expenditure." Opp. at 4 (emphasis added).

6

appears to have been concerned are those that will be converted to expenditures subject to regulation under [the statute]" (i.e., independent expenditures), *FEC v. Survival Educ. Fund*, 65 F.3d 285, 295 (2d Cir. 1995).

> B. The Court Lacks Jurisdiction to Hear CREW's Untimely Challenge to the Regulation.

CREW claims standing to challenge the regulation because the Commission relied on its validity to dismiss the original administrative complaint. But on remand the Commission dismissed without any such reliance, *see* Hunter and Petersen, *supra* (referencing 52 U.S.C. § 30111(e)'s "good faith" reliance provision), and CREW concedes its claim on the underlying administrative complaint "is now moot," Opp. at 7 n.6.

When "a plaintiff has sued to challenge the lawfulness of certain [agency] action . . . but that portion of the action is rendered moot, the plaintiff does not retain standing to challenge the regulation that was the basis for that action apart from any concrete application that threatens imminent harm to his interests." *Cierco v. Mnuchin*, 857 F.3d 407, 417 (D.C. Cir. 2017) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)). Indeed, as the D.C. Circuit has already concluded, "given that reliance on that regulation would afford a defense to 'any sanction,' . . . the court might well uphold FEC non-enforcement without ever reaching the regulation's validity." *Shays v. FEC*, 414 F.3d 76, 95–96 (D.C. Cir. 2005).

Relatedly, CREW admits it failed to raise concerns about the regulation until after it had been in existence for over three decades. *See, e.g.*, Opp. at 14. But a party generally forfeits "an opportunity to challenge an agency rulemaking on a ground that was not first presented to the agency" during the rulemaking process. *Koretoff v. Vilsack*, 707 F.3d 394, 397 (D.C. Cir. 2013). In general, untimely regulatory challenges should be entertained only "when raised as a defense to an agency enforcement action," *Am. Scholastic TV Programming Found. v. F.C.C.*, 46 F.3d

7

1173, 1178 n.2 (D.C. Cir. 1995) (emphasis added), by "a party <u>against whom a rule is applied</u>," *Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) (emphasis added).[6] CREW should not have been allowed to end-run the statute of limitations by bringing a complaint that now has been dismissed on grounds unrelated to the long-standing regulation.

### III.  CROSSROADS GPS HAS DEMONSTRATED IRREPARABLE HARM.

Notwithstanding CREW's assertions, Crossroads GPS has demonstrated irreparable injury.  Steven Law, Crossroads' president, attests that Crossroads "is at present deterred and constrained from sponsoring any independent expenditures for the remainder of this election cycle" as a result of this Court's decision.  Law Aff. (Dkt. No. 45-2) ¶ 10.  Mr. Law cites CREW's threats to use the decision to file complaints against groups making independent expenditures that do not report their donors pursuant to the decision as an additional deterrent on Crossroads GPS's speech.  *Id.* ¶ 11.  The practical constraint imposed on Crossroads GPS regarding its ability to make independent expenditures as a result of the Court's decision is informed by its experience in *Van Hollen I*, when a similar decision also inhibited Crossroads GPS's and others' speech.  *Id.* ¶ 12.  "[W]here, as here, prosecutions are actually threatened, this challenge, if not clearly frivolous, will establish the threat of irreparable injury." *Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965).

CREW's objection that Crossroads GPS "does not actually assert it intends to run independent expenditures," Opp. at 10 n.10, also misses the point: the uncertainty caused by the truncated stay precludes such planning.  The two obscenity cases CREW cites to refute Crossroads' irreparable harm also are inapposite, as those authorities do not apply to the core

---

[6]   *See also Grid Radio v. F.C.C.*, 278 F.3d 1314, 1320–21 (D.C. Cir. 2002); *N.L.R.B. Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195 (D.C. Cir. 1987).

political speech at issue here. *Id.* at 11; *cf. R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 422 (1992) ("[c]ore political speech occupies the highest, most protected position . . . obscenity and fighting words receive the least protection of all").

IV. **THE HARMS TO THE FEC AND THE PUBLIC – AND THE LACK THEREOF TO CREW – SUPPORT A STAY.**

While Crossroads GPS's motion (at 9-19) details the relevant harms to the parties and the public, it offers four points here in response to CREW's Opposition on this issue. *First*, Crossroads GPS has noted how CREW never claimed to be harmed by the challenged regulation until only recently, notwithstanding its ample opportunity to do so earlier. Such late-breaking "injury" is not the type of substantial, irreparable harm that precludes a stay. *See, e.g., U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 481 U.S. 1301, 1303 (1987) (Rehnquist, Circuit Justice) (granting stay, in part, after finding party could not claim "irreparable harm" where status quo had existed for at least three years); *Lucas v. Townsend*, 486 U.S. 1301, 1305 (1988) (Kennedy, Circuit Justice) (discounting harm where such "burdens can fairly be ascribed to the [non-movant's] own failure" to timely raise issue with agency). CREW's response is that "[t]he continued existence of the regulation will continue to injure CREW." Opp. at 15. However, CREW's claim to injury by being "deprived of [] information to which it is entitled," *id.*, begs the very question that must be resolved on appeal: *viz.*, whether the statute in fact "legally entitle[s]" CREW to the donor information it seeks. Therefore, CREW's claim to injury is entirely speculative.

*Second*, CREW remarkably claims "there is no need or opportunity for either FEC rulemaking or public comment" on the independent expenditure reporting requirement at issue here. Opp. at 14. This directly conflicts with general administrative law principles, specific congressional intent when that body directed the FEC to conduct a rulemaking in 1980, and the

9

Court's 45-day stay and opinion, the latter of which specifically contemplated the need to resolve some specific reporting scenarios in an interim rulemaking.

*Third*, CREW suggests the Commission's failure to take a position on Crossroads GPS's motion to stay pending appeal evidences a lack of harm to the agency. Opp. at 14 n.13. Not so. At least two commissioners – and apparently the Commission's professional staff – wanted to appeal but were frustrated from doing so by at least one other commissioner, and presumably also were frustrated from taking a position on this motion to stay for the same reason. *See* Hunter and Petersen, *supra*. Nonetheless, the agency already advised the district court that "vacatur could result in 'inadequate guidance' for speakers ahead of the 2018 elections." FEC's Mot. for S.J. (Dkt. No. 30) at 50; *see also* FEC's Reply to CREW's Opp. to FEC's Mot. for S.J. (Dkt. No. 37) at 43; *see also Stop This Insanity, Inc. Employee Leadership Fund v. Fed. Election Comm'n*, 902 F. Supp. 2d 23, 50 (D.D.C. 2012), *aff'd*, 761 F.3d 10 (D.C. Cir. 2014) (where "the plaintiffs do not seek a preservation of the status quo, but rather they seek fundamental change in how [entities] are regulated by the FEC, [this] would undoubtedly require new agency guidance and other burdens that are at least equal, if not far greater, than any burdens that would result from" the status quo).

*Four*, while CREW attacks application of the *Purcell* principle, the bottom line is that this principle has maximum force in the weeks leading up to a national election. Voting for this year's national midterm election begins in just days. *See, e.g.*, Minn. Stat. § 203B.081. And there is a "strong public interest in the exercise of free speech rights," *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016), that is served by "ensuring that [a party's] First Amendment rights are not infringed before the [validity] of the regulation has been definitively determined," *Stewart v. District of Columbia Armory Bd.*, 789 F.Supp. 402, 406

(D.D.C. 1992).

## V. THE CENTERPIECE OF CREW'S OPPOSITION – THE *VAN HOLLEN* LITIGATION – DOES NOT SUPPORT ITS ARGUMENTS.

In arguing against a stay, CREW repeatedly links this case back to *Van Hollen v. FEC*, 2012 WL 1758569 (D.C. Cir. May 14, 2012) (per curiam). But *Van Hollen* cuts against CREW.

Over Judge Henderson's objection, the *Van Hollen* motions panel denied a stay largely – and, it turns out, errantly – on the movant's perceived lack of success. *See Ctr. For Individual Freedom v. Van Hollen*, 694 F.3d 108 (D.C. Cir. 2012) (reaching opposite conclusion at merits stage). Had the motions panel more accurately assessed the likelihood of success on the merits, it may well have granted the stay.

CREW's citation to *Van Hollen* for CREW's injury claim is also inapt. In *Van Hollen*, this Court found that the appellee, then-Congressman Van Hollen, would be harmed by a stay because he would not know the donors "to groups sponsoring 'electioneering communications' mentioning him by name." 2012 WL 1758569 at *3. Here, by definition, independent expenditures are not aimed at CREW, and therefore CREW cannot claim the same injury as the *Van Hollen* appellee.

Furthermore, at nearly every step of *Van Hollen*, courts avoided interfering with three general elections. For example, even though denying preliminary relief, the motions panel still prioritized oral argument for "the first appropriate date in September 2012." *Id.* at *1. The merits panel, in turn, issued its opinion on September 18, 2012 – just four days after oral argument. *See Van Hollen*, 694 F.3d 108. On remand, after an October 29, 2013 hearing, the district court held its opinion until November 25, 2014 – i.e., shortly after the mid-term elections. *See Van Hollen v. FEC*, 74 F. Supp. 3d 407 (D.D.C. 2014). And this Court issued its final opinion in early January 2016, well in advance of the November election. *See Van Hollen*, 811

F.3d 486.  This timeline illustrates a judicial desire to avoid upending the campaign finance landscape so close to a national election.  This Court could achieve the same result by entering a stay here.

## CONCLUSION

The Court correctly stayed its vacatur but cut the stay so short that it does not provide real protection.  The Court should extend the stay for the duration of the appeal.

|  |  |
|---|---|
|  | Respectfully submitted,<br>/s/ Thomas W. Kirby |
| Thomas J. Josefiak | Michael E. Toner (D.C. Bar No. 439707) |
| J. Michael Bayes (D.C. Bar No. 501845) | Thomas W. Kirby (D.C. Bar No. 915231) |
| HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC | Andrew G. Woodson (D.C. Bar No. 494062) |
| 45 North Hill Drive, Suite 100 | Eric Wang (D.C. Bar No. 974038) |
| Warrenton, VA 20186 | WILEY REIN LLP |
| Tel.: 540.341.8808 | 1776 K Street, NW |
| Fax: 540.341.8809 | Washington, DC 20006 |
|  | Tel.: 202.719.7000 |
|  | Fax: 202.719.7049 |
|  |  |
|  | *Counsel for Crossroads Grassroots Policy Strategies* |
| September 12, 2018 |  |