**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, *et al.*, )
 )
 Plaintiffs, )
 )
 v. )          Civil Action No. 16-00259 (BAH)
 )
FEDERAL ELECTION COMMISSION, )
 )
 Defendant, )
 )
CROSSROADS GRASSROOTS POLICY )
STRATEGIES, )
 )
 Intervenor-Defendant. )
 )
_____)

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO INTERENOR DEFENDANT CROSSROADS GRASSROOTS POLICY STRATEGIES'S EMEREGENCY MOTION FOR A STAY PENDING APPEAL

For the first time in its reply brief on its emergency motion, Defendant Crossroads

Grassroots Policy Strategies ("Crossroads") argues Plaintiffs Citizens for Responsibility and

Ethics in Washington and Nicholas Mezlak (together "CREW") lack standing to challenge the

validity of 11 C.F.R. § 109.10(e)(1)(vi) because Crossroads's appeal of CREW's claim under the

Federal Election Campaign Act ("FECA") is now moot.[1]  Crossroads Reply 7–8.  Crossroads's

belated argument should be rejected.  As long as the FEC regulation is in effect, CREW's injury

_____

[1] As it did here, Crossroads, in briefing its parallel motion for a stay pending appeal in the D.C. Circuit, did not raise this argument until its reply brief, *see* Crossroads Reply at 6-7 [ECF No. 1750159], *Crossroads Grassroots Policy Strategies v. CREW*, No. 18-5261 (D.C. Cir. Sept. 12 2018), thereby necessitating a sur-reply in that court as well.

persists.  The authority Crossroads cites only underscores the point raised in CREW's opposition brief:  it is *Crossroads* that lacks standing.  Its motion for a stay pending appeal should be denied.

### A. Crossroads's Authority Does Not Undermine this Court's Jurisdiction to Enter the August 3, 2018 Decision

**1.** The D.C. Circuit has recognized that while the resolution of a challenge to a specific application of a rule may moot a plaintiff's *as-applied* challenge, it does not moot the plaintiff's challenge to the *facial validity* of a regulation.  *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986) (holding that while "the appellants' challenge to the standard *as applied to their specific fee waiver request* is, in fact, moot," there is, "however, no question that the appellants' other arguments concerning the facial validity of the DOJ guidelines and the interior regulation are *not* moot").  CREW's challenge to the regulation was both as applied and facial. *CREW v. FEC*, 316 F. Supp. 3d 349, 383 (D.D.C. 2018) (noting CREW's standing to bring "a facial challenge to the regulation").  Accordingly, even if CREW's as-applied challenge is moot, its facial challenge is not.  Crossroads's argument should be rejected on this ground alone.

**2.** Moreover, Crossroads simply misrepresents what, exactly, is moot.  The statement of reasons given for dismissal on remand superseded the prior statement of reasons given for the FEC's prior dismissal of CREW's complaint.  This Court found that the prior statement of reasons was "contrary to law."  *CREW*, 316 F. Supp. at 417.  Crossroads sought to appeal that decision.  Now that the FEC has abandoned that position and offered a new reason for dismissal, it is Crossroads's *appeal* that is now moot, because the first statement of reasons is no longer the operative statement to be considered in any judicial forum.  *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1353 (D.C. Cir. 2014) (stating agency's issuance of new explanation for action would moot challenge to prior explanation).  Moreover, because Crossroads prevailed on

2

remand, it currently suffers no injury for which it could seek judicial review. *Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (party may only seek review of decision remanding case to agency when "it got no satisfaction" on remand). Yet nothing about the remand moots CREW's claim, either against the regulation or against Crossroads's failure to disclose its contributors due to its adherence to the regulation.

**3.** Crossroads also misrepresents the facts at issue in *Cierco v. Mnuchin*, 857 F.3d 407, 416 (D.C. Cir. 2017), the authority on which it relies to question CREW's standing. There, the plaintiffs challenged the legality of two notices that identified their bank as a suspected money launderer, seeking both to have the notices withdrawn and declared unlawfully issued. *Id.* at 410. The notices were in fact withdrawn during the course of the district court litigation, but the plaintiffs sought to continue their challenge to the unlawfulness of the notices. *Id.* The court, however, found the plaintiffs lacked standing to continue that challenge because withdrawal of the notices provided the plaintiffs with "full relief" on all their claims. *Id.*

That is a far cry from the situation here. CREW has not received "full relief" on its claim seeking disclosure from Crossroads of its unlawfully withheld contributors. Rather, on remand, the FEC once again dismissed CREW's administrative complaint because of the existence of the regulation and Crossroads's reliance on it. *See* First General Counsel's Report 15, MUR 6696R (Crossroads) (Aug. 24, 2018), http://eqs.fec.gov/eqsdocsMUR/6696R_2.pdf (recommending dismissal of CREW's complaint on remand, despite finding reason to believe Crossroads violated the FECA, because "it was not unreasonable for a filer to assume that the Commission's implementing regulation set forth all of the legal requirements for reporting

independent expenditures").  In other words, the regulation is *still* depriving CREW of its rights to know the contributors for Crossroads's 2012 independent expenditures.[2]

    **4.** Crossroads's argument also suffers from the fundamental flaw of relying on a conclusion that this Court lacked jurisdiction to issue its judgment on August 3 because Crossroads's FECA appeal was rendered moot by actions *taken after this Court's judgment.* Crossroads cites nothing, however, to connect that conclusion to its authority which only makes the rather more banal point that a plaintiff's standing to continue to pursue a case to judgment may be undermined where its claims become moot during the course of the proceeding.

    **5.** Moreover, beyond Crossroads's mischaracterization of the law, Crossroads also ignores the fact that the very authority on which it relies recognizes that a plaintiff retains standing to challenge the regulation when there are "concrete application[s] that threaten[] imminent harm to [the plaintiff's] interests."  *Cierco*, 857 F.3d at 416 (internal quotation marks omitted).  Here, there are numerous concrete applications of the regulation that threaten imminent and continuing harm to CREW.

    For example, while Crossroads asserts that organizations are refraining from making independent expenditures due to confusion about the state of the law, *see* Crossroads Reply 1–2, the facts show that assertion is false.[3]  FEC data shows that groups have been quite active in

---

[2] *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (finding plaintiff lacked standing to continue challenge to rules where it had settled its underlying dispute with the agency during the course of litigation in the district court, and thus received the relief requested); *Maydak v. United States*, 630 F.3d 166, 169 (D.C. Cir. 2010) (holding prisoners' challenge to conditions was moot where prisoners were released from prison and thus the prisoners could not pursue their appeal).

[3] Crossroads suggests that its ceased making independent expenditures solely because of this court's decision.  *See* Crossroads Reply 8.  But Crossroads last made independent expenditures back in *2014*, about four years before the decision.  *See* FEC, Independent Expenditures (last visited Sept. 13, 2018), https://bit.ly/2N5Xjyc.

making independent expenditures since the decision below, spending millions of dollars on them. *See* FEC, Independent Expenditures (last visited Sept. 13, 2018), https://bit.ly/2MphFgB (showing, for example, Americans for Prosperity spent over $4 million on independent expenditures on August 29, 2018). The facts also show, moreover, that CREW is still being deprived of the information to which it is legally entitled as organizations making these independent expenditures continue to refuse to report their contributors. *See, e.g.*, Americans for Prosperity, Form 5 (Aug. 31, 2018), https://bit.ly/2N6Xnhf (reporting "0" in contributions).

Moreover, there is absolutely no reason to think CREW's deprivation will stop anytime soon. 2018 is on pace to be a record breaking year for independent expenditures in a mid-term election, independent expenditures that will be made without any disclosure if the regulation stays in effect. *See* OpenSecrets.org, Total Outside Spending by Election Cycle, Excluding Party Committees, Cycle to Date (last visited Sept. 13, 2018), https://bit.ly/1M8REvf (showing $309 million in independent expenditures in the 2018 election cycle so far). Every independent expenditure report that neglects to disclose the maker's contributors because the reporting entity follows the regulation deprives CREW of vital information to which it is legally entitled. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016) (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998) (holding plaintiff denied access to information subject to disclosure under the FECA suffered cognizable injury sufficient to support standing)); *see also In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012) (finding threat of future injury sufficient to support standing where injury was based on existing rules that would be applied in future proceedings that are likely to occur). Moreover, Crossroads itself asserts that CREW will file new

complaints; complaints that two commissioners (enough to currently block enforcement) have already promised to subject to the invalid regulation.  Crossroads Reply 2, 8.[4]

### B.  Crossroads's Authority Only Undermines *Its* Standing to Seek Relief Here

For the reasons given, Crossroads's late challenge to CREW's standing based on the mootness of Crossroads's FECA appeal does nothing to undermine this Court's authority to issue the August 3 decision.  What the authority does undermine, however, is Crossroads's standing to seek any relief here.  Crossroads's sole basis to intervene in this action was to guard against the possibility of enforcement by the FEC if the Court were to find the prior dismissal was contrary to law.  But now that the FEC has once again dismissed the claim on remand, Crossroads's sole predicate for standing no longer exists.

**1.**  As the *Cierco* court said, where a party's interest in the action becomes moot because the party obtains "full relief," the party may not continue to litigate the validity of a regulation unless it can show "concrete application[s]" of the regulation to it "that threaten[] imminent harm to [the plaintiff's] interests."  *Cierco*, 857 F.3d at 410, 416.  Having obtained dismissal on remand, Crossroads now enjoys "full relief" on its desire to obtain a dismissal of CREW's administrative complaint against it.  That is why Crossroads itself acknowledges that its FECA appeal is now moot, which is a jurisdictional bar to any further relief on that issue.  Crossroads

---

[4] Crossroads complains that CREW's entitlement to the information under the statute is an issue it wishes to dispute.  Crossroads Reply 10.  However, in evaluating plaintiffs' standing, the Court "must assume that [plaintiffs] state[] a valid legal claim."  *Info. Handling Serv., Inc. v. Defense Automated Printing Serv.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008) (informational injury doctrine focuses on whether plaintiff has alleged that, under "[their] view of the law," statute requires disclosure of requested information (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)).  Thus, for the purposes of Crossroads's attack on CREW's standing, this Court must assume CREW is in fact legally entitled to know the identifies of all of Crossroads's contributors.

6

Br. on Jurisdictional Issues 1–2, ECF No. 51.  Because Crossroads's sole interest in this litigation is now moot, however, it has no standing to seek relief from this Court related to CREW's facial challenge to the regulation.  *See Bailey v. Patterson*, 368 U.S. 346, 346–47 (1961) (movant must have standing to seek stay); *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (intervening defendants must show standing).

**2.**  Crossroads attempted to circumvent this conclusion by submitting an affidavit stating that Crossroads continues to have an interest in defending the litigation because it "would like to maintain the ability to continue making independent expenditures" without disclosing any legally required information.  Aff. of Steven Law ¶ 10, ECF No. 45–2.  Crossroads's desire, however, fails to prove the existence of "concrete applications that threaten[] imminent harm" to it.  *Cierco*, 857 F.3d at 416.

A mere "desire" to engage in some activity "is insufficient to satisfy the requirement of imminent injury."  *Summers*, 555 U.S. at 496.  "'Such some day intentions—without any description of concrete plans . . . –do not support a finding of actual or imminent injury that our cases require.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).  Yet that is all Crossroads here asserts—its desire to preserve its ability to someday make an independent expenditure without complying with the disclosure obligations of 52 U.S.C. § 30104(c)(1) or (c)(2)(C).  Crossroads must show more than that: it must show that it had concrete plans to create an independent expenditure at the time of the Court's judgment.  It has not done so.  *See Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 498 F. Supp. 2d 150, 157–58 (D.D.C. 2007) (finding plaintiffs lacked standing to assert First Amendment claim where they had no concrete plans that were imminently harmed by the challenged rule); *cf. FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (holding plaintiffs had standing to challenge statute

where they proved they had concrete "plan[s] on running 'materially similar' future targeted broadcast ads mentioning a candidate within the blackout period").[5]

Crossroads's late and misleading characterization of the facts and law should be rejected.  Crossroads's resort to such tactics merely proves its insurmountable task:  to demonstrate that it will succeed in showing that a statute that requires disclosure of "all contributions" and identification of contributions funding "an independent expenditure" does not mean what it says and that the agency was free to ignore it.  Indeed, the authority it cites merely underscores their very lack of standing to seek the relief requested here.

Dated: Sept. 13, 2018.

Respectfully submitted,

/s/ Stuart McPhail
Stuart C. McPhail
smcphail@citizensforethics.org
(D.C. Bar. No. 1032529)
/s/ Adam J. Rappaport
Adam J. Rappaport
arappaport@citizensforethics.org
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics
in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Telephone: (202) 408-5565
Fax: (202) 588-5020

*Attorneys for Citizens for Responsibility and
Ethics in Washington and Nicholas Mezlak*

---

[5] Further, as noted above, Crossroads ceased making independent expenditures in 2014, s*ee supra* n.3, further undermining any inference that this Court's judgment impacted any concrete plan to make an independent expenditure.  In fact, public reporting indicates that Crossroads has essentially terminated its political operations, with its leadership transferring activities to a new nonprofit.  *See* Robert Maguire, One Nation rising: Rove-linked group goes from no revenue to more than $10 million in 2015, OpenSecrets News (Nov. 17, 2016), https://bit.ly/2fJebqp.